The STATE of North Dakota, Plaintiff, Appellant and Cross-Appellee,

v.

Gerard TIBOR, Defendant, Appellee and Cross-Appellant.

Cr. No. 1076.

Supreme Court of North Dakota.

Sept. 4, 1985.

878

Bruce B. Haskell, argued, Asst. State's Atty., Mandan, for plaintiff, appellant and cross-appellee. Appearance by Richard Schnell.

Mark L. Greenwood, argued, Greenwood & Greenwood, Dickinson, for defendant, appellee and cross-appellant.

LEVINE, Justice.

Gerard Tibor was charged with gross sexual imposition in violation of North Dakota Century Code § 12.1–20–03(2). Tibor made a motion supported by affidavit and brief for dismissal on the ground his prosecution was barred by NDCC § 12.1–20–01(3) because the alleged offense had not

been timely reported. The State resisted the motion by brief without supporting affidavit. No hearing was requested or held. The trial court denied the motion. Tibor moved for reconsideration and submitted additional affidavits. There was no response from the State. That motion also was denied summarily. Subsequently, the trial court granted a third motion by Tibor and dismissed the prosecution upon finding § 12.1–20–03(2)(a) unconstitutionally vague and overbroad.

■ The State appeals the dismissal and Tibor cross-appeals from the denial of the original motions to dismiss.[1] We reverse and remand for proceedings in accordance with this opinion.

### 1. Standing

The first issue on appeal is whether or not the district court erred in finding NDCC § 12.1–20–03(2)(a) unconstitutionally vague and overbroad.[2]

The State argues the district court erred in reaching its conclusion because Tibor lacked standing to raise these constitutional claims. We agree.

■ A party is entitled to have a court decide the merits of a dispute only after demonstrating he has standing to litigate the issues placed before the court. *State v. Carpenter*, 301 N.W.2d 106 (N.D.1980). In this case, to determine whether Tibor

---

1. The denials of Tibor's motions to dismiss the prosecution are not appealable orders. NDCC § 29–28–06; *State v. Rippley*, 319 N.W.2d 129 (N.D.1982); *Kolling v. Goodyear Tire and Rubber Co.*, 272 N.W.2d 54 (N.D.1978). However, North Dakota Rule of Appellate Procedure 35(c) authorizes us, upon an appeal from a judgment, to review any intermediate order or ruling involving the merits. Consequently, we may review the trial court's denial of Tibor's motions as part of our review of the State's appeal from the judgment dismissing its prosecution.

2. NDCC § 12.1–20–03(2)(a) reads:
 "2. A person who engages in sexual contact with another, or who causes another to engage in sexual contact, is guilty of an offense if:
 a. The victim is less than fifteen years old."

NDCC § 12.1–20–02(4) defines sexual contact as "any touching of the sexual or other intimate parts of the person." In holding the statute unconstitutionally vague and overbroad the district court stated:
 "[T]he type of behavior prohibited by [12.1–20–03(2)(a)] ... clearly defies the imagination and should offend the common sense of all. It seems clear that the following conduct would be sufficient to obtain a felony conviction if the statute is applied as written:
 1. A parent changing their baby's diapers;
 2. A doctor examining a patient under the age of 15;
 3. The bathing of young children by parents, relatives or custodians; and
 4. Kissing, hugging or roughhousing with one's children.
 The list could go on and on."

has standing to raise the constitutional issues it is necessary to distinguish vagueness from overbreadth, because there may be standing to assert one and not the other.

■ A law is void for vagueness if it lacks "ascertainable standards of guilt," *Winters v. New York*, 333 U.S. 507, 515, 68 S.Ct. 665, 670, 92 L.Ed. 840 (1948), such that it either forbids or requires "the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *Connally v. General Constr. Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926); *see also State v. Carpenter, supra; State v. Woodworth,* 234 N.W.2d 243 (N.D.1975). Vague laws offend due process because they violate the two essential values of fair warning and nondiscriminatory enforcement:

"First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Secondly, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with attendant dangers of arbitrary and discriminatory application." *Grayned v. City of Rockford*, 408 U.S. 104, 108–109, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972). [Footnotes omitted.]

*See also Kolender v. Lawson,* 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983).

■ The doctrine of overbreadth, on the other hand, prohibits the law from criminalizing constitutionally protected activity:

"A governmental purpose to control or prevent activities constitutionally subject to state regulations may not be achieved by means which sweep unnecessarilly broad and thereby invade the area of protected freedoms." *Zwickler v. Koota*, 389 U.S. 241, 250, 88 S.Ct. 391, 396, 19 L.Ed.2d 444 (1967).

*See also, Village of Hoffman Estates v. Flipside*, 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982); *State v. Carpenter, supra.*

■ The doctrines of vagueness and overbreadth are thus distinct in that an overbroad statute may be clear and precise in penalizing protected activities, while an unconstitutionally vague statute need not even reach protected activities. *See* L. Tribe, American Constitutional Law, § 12–28 (1978).

■ Because the two doctrines can guard against differing constitutional infirmities, each can have differing requirements for standing. To have standing to raise a vagueness challenge, a litigant must almost always demonstrate that the statute in question is vague as applied to his own conduct, without regard to its potentially vague application in other circumstances.[3] *Parker v. Levy*, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974); *City of Fargo v. Windmill, Inc.*, 350 N.W.2d 32 (N.D.1984). In contrast, in several circumstances an overbreadth claimant may be allowed to assert the rights of third persons to whom the challenged law could conceivably apply in a manner that would violate their constitutional rights. *See Singleton v. Wulff*, 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976); *State v. Unterseher*, 255 N.W.2d 882 (N.D.1977) (a litigant may assert only his constitutional rights unless he can present "weighty countervailing policies"); Annot. 50 L.Ed.2d 902 (1978); Note, Standing to Assert Constitutional Jus Tertii, 88 Harv.L.Rev. 423 (1974). A liti-

---

**3.** A litigant may challenge the constitutionality of a statute on vagueness grounds, even though the statute may not be vague as applied to his conduct, when the statute at issue purports to regulate or prescribe rights of speech protected by the first amendment. *See Coates v. City of Cincinnati*, 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971); *Gooding v. Wilson*, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972).

gant claiming a statute is overbroad is allowed to assert third-party standing, when a party asserting a law is void for vagueness may not, because in certain situations individuals adversely affected by an overbroad statute are unable to protect their rights by themselves. *E.g., NAACP v. Alabama,* 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958).

■ We conclude Tibor has no standing to challenge NDCC § 12.1–20–03(2)(a) as being void for vagueness. Section 12.1–20–03(2)(a) does not regulate or proscribe speech protected by the first amendment, and Tibor has not shown § 12.1–20–03(2)(a) to be impermissibly vague in all of its applications.[4] *Flipside, supra; see also Coates, supra* (the law must be such that no standard of conduct is specified at all).

Furthermore, Tibor has not shown that he is being prosecuted under § 12.1–20–03(2)(a) for such hypothetically unconstitutionally vague applications of § 12.1–20–03(2)(a) as "changing his baby's diapers" or "kissing, hugging or roughhousing with his children." Consequently, because Tibor has not demonstrated that § 12.1–20–03(2)(a) is impermissibly vague as applied to him, he has no standing to raise such a constitutional claim.[5] *Parker, supra; Windmill, Inc., supra.*

Nor has Tibor established either personal or third-party standing to attack NDCC § 12.1–20–03(2)(a) on the ground of overbreadth. Tibor has not shown that the conduct he engaged in, and for which he was prosecuted, is constitutionally protected activity, such as "hugging his children." *See Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) (parents' interests in the companionship, care, custody, and management of children warrants

particular respect). Therefore he does not have standing to attack § 12.1–20–03(2) as being unconstitutionally overbroad as applied to his conduct. Furthermore, although the overbreadth doctrine permits litigants to assert third-party standing in certain circumstances, none of these circumstances exists here.

■ The Supreme Court recognizes three overbreadth situations that justify third-party standing. First, it exists where there is a close relationship between the litigant's rights and the rights of a third party such that the litigant is fully, or very nearly, as effective a proponent of those rights as the third party. *See, e.g., Wulff, supra; Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); *Eisenstadt v. Baird,* 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972). Second, there is standing when individuals not parties to a particular suit stand to lose by the outcome of litigation and yet have no effective way of preserving their rights themselves. *See, e.g., Barrows v. Jackson,* 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586, (1953). Third, there is third-party standing when the challenged law allegedly infringes upon speech protected by the first amendment. *See, e.g., Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973).

Tibor has not shown that any of these three exceptions to the general rule against third-party standing exist in this case. He has not demonstrated any close relationship with hypothetical third parties or that any third party would be adversely affected by the outcome of this case. Nor does NDCC § 12.1–20–03(2)(a) infringe upon speech or conduct protected by the first amendment.

---

4. For example, NDCC § 12.1–20–03(2)(a) clearly prohibits fondling of the intimate parts of one under the age of fifteen by language that "the ordinary person exercising common sense can sufficiently understand and comply with." *Civil Service Commission v. Letter Carriers,* 413 U.S. 548, 579, 93 S.Ct. 2880, 2887, 37 L.Ed.2d 796 (1973).

5. If Tibor believed he needed a more detailed notice of the facts giving rise to his prosecution, he could have moved for a Bill of Particulars pursuant to North Dakota Rule of Criminal Procedure 7(f). *State v. Wells,* 276 N.W.2d 679 (N.D.1979), *cert. den.,* 442 U.S. 932, 99 S.Ct. 2865, 61 L.Ed.2d 300 (1979). The State could also have amended the Information to indicate specific facts giving rise to the charge against Tibor. NDRCrimP 7(e).

Tibor has failed to establish any factual basis that § 12.1–20–03(2)(a) is vague in all its applications or as applied to him. He has also failed to demonstrate that the statute is overbroad as applied to his conduct, there being nothing in the record before us that he is being prosecuted for constitutionally protected conduct. Nor has he established the requisites for third-party standing.

Absent standing in Tibor to raise the constitutional issues, the trial court erred in deciding them, and dismissing the lawsuit. The judgment of dismissal is therefore reversed and the case remanded.

### 2. Tibor's Cross-Appeal

Section 12.1–20–01(3), NDCC, reads:

"No prosecution may be instituted or maintained under sections 12.1–20–03 through 12.1–20–08 or section 12.1–20–12 unless the alleged offense was brought to the notice of public authority within three months of its occurrence or, where the alleged victim was a minor or otherwise incompetent to make complaint, within three months after a parent, guardian, or other competent person specifically interested in the victim, other than the alleged offender, learned of the offense."

Tibor sought dismissal on the ground that his sister, who reported the offense, failed to report it within three months after learning of it, as is required by § 12.1–20–01(3).

 The impetus behind the Legislature's enactment of the prompt reporting requirement of § 12.1–20–01(3) can be found in the comments to the Model Penal Code [6] from which § 12.1–20–01(3) was derived:

"The requirement of prompt complaint springs in part from a fear that unwanted pregnancy or bitterness at a relationship gone sour might convert a willing participant in sexual relations into a vindictive complainant. Barring prosecution if no report is made within a reasonable time is one way of guarding against such fabrication. Perhaps more importantly, the provision limits the opportunity for blackmailing another by threatening to bring a criminal charge of sexual aggression. This objective is especially critical for those offenses involving consensual relations. The parents of an underage girl who has engaged in intercourse with an older male, for example, may forego public prosecution, which does nothing to enhance the reputation of their daughter, in favor of private gain. Requiring complaint within three months of learning of such an event reduces the ability of such persons to demand continuing payment for silence." Model Penal Code Comments to § 213.-6(4) (1980).

*See also* House Judiciary Committee Minutes on Senate Bill 2049, 43rd Session (1973); House Social Services and Veterans Affairs Committee Minutes on House Bill 1169, 49th Session (1985).

In enacting NDCC § 12.1–20–02(3), the Legislature did not envision situations where a minor is sexually abused and the parents, or other persons specifically interested in the minor, delay for over three months in reporting the incident to the authorities. Thus, § 12.1–20–01(3) provides no exception for incestuous or other situations where a parent or other specifically interested person is unable or chooses not to report the incident. *See, Commonwealth v. Shade,* 242 Pa.Super. 115, 363 A.2d 1187 (1976).[7] In such situations

---

**6.** When a statute is derived from the Model Penal Code we may look to the comments from the relevant sections for insight into the meaning and application of the statute. *State v. Huber,* 361 N.W.2d 236 (N.D.1985).

**7.** The 1985 Legislature alleviated such problems by amending § 12.1–20–03 so that the three-month limitation does not apply where the person learning of the offense is the offender's

spouse, child, sibling, or parent. NDCC § 12.1–20–01(4). Virtually every State that has adopted the prompt complaint requirement derived from Model Penal Code § 213.6(4) has since repealed it. *See* Utah § 76–5–407; Pa.Tit. 18, § 3105; Haw. § 707–740. Only New Hampshire and Connecticut have retained the prompt complaint requirement, but have extended it to

§ 12.1–20–01(3) unwittingly accords greater protection to a hypothetically innocent defendant than to an actually victimized minor.

■ By its plain language § 12.1–20–01(3) is a statute of limitation.[8] The State therefore has the burden to affirmatively prove that the charge was brought within the limitation period, or that the limitation period does not apply. *State v. Hatch*, 346 N.W.2d 268 (N.D.1964); *State v. Tennyson*, 73 N.D. 259, 14 N.W.2d 171 (1944); *United States v. Gonsalves*, 675 F.2d 1050 (9 Cir.1982); *cert. denied*, 459 U.S. 837, 103 S.Ct. 83, 74 L.Ed.2d 78 (1982).

■ In order to determine whether the State must prove compliance with the statute of limitation beyond a reasonable doubt or by a preponderance of the evidence, we look to the policy reasons underlying statutes of limitation.

■ Compliance with the statute of limitation is not an element of an offense but rather a jurisdictional fact. NDCC 12.-1–01–03(1); *State v. Tennyson, supra.* While it is clear that the State must prove beyond a reasonable doubt the elements of the offense charged, § 12.1–01–03, *State v. Bohl*, 317 N.W.2d 790 (N.D.1982), there is no concomitant requirement that it so vigorously prove timely institution of a charge or an exception to the mandate of a limitation statute. This is so because a statute of limitation does not go to the guilt or innocence of the accused. Rather it provides a safeguard against stale charges and stale evidence, *John v. State*, 96 Wis.2d 183, 291 N.W.2d 502 (1980); 1 Robinson, Criminal Law Defenses, § 26(a); against blackmail, *People v. Zamora*, 18 Cal.3d 538, 134 Cal.Rptr. 784, 557 P.2d 75 (1976); and against lackadaisical investigation and prosecution, *People v. Zamora,*

*supra.* It is but an act of grace on the part of the Legislature which need not have provided any limitation. We insist on proof beyond a reasonable doubt in criminal prosecutions because that "operates to give 'concrete substance' to the presumption of innocence to insure against unjust convictions and to reduce the risk of factual error in criminal proceedings." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2787, 61 L.Ed.2d 560 (1979) (quoting *In Re Winship*, 397 U.S. 358, 363, 90 S.Ct. 1068, 1069, 1072, 25 L.Ed.2d 368 (1970). There is no such justification for proving compliance with a statute of limitation.

■ We therefore conclude that the State must prove compliance with the statute of limitation by a preponderance of the evidence. The State must also bear the same burden to prove the existence of any exceptions to a statute of limitation which excuse its application. *United States v. Gonslaves, supra; State v. Lester*, 170 Ga. App. 471, 317 S.E.2d 295 (1984); *Duncan v. State*, 282 Md. 385, 384 A.2d 456 (Md.1978).

In this case, Tibor properly raised his statute of limitation objections by written motion. Rule 47, NDRCrimP; Rule 12(b)(2), NDRCrimP. He supported this motion and the subsequent motion to reconsider with affidavits sufficient to raise the issue of the statute of limitation. The State resisted the motion by written brief alone, without affidavits, and without requesting an evidentiary hearing pursuant to Rule 3.2(c), North Dakota Rules of Court. Instead, the State argued as a matter of law that the aunt of the victim, who reported the alleged offense, was, by virtue of her blood relationship to the defendant, equally interested in him and therefore not "specifically interested" in the victim. The trial court apparently agreed.[9] For the

---

six months and one year, respectively. *See* N.H. § 632–A:7; Conn. §§ 53a–69.

**8.** The legislative history of § 12.1–20–01(3) also indicates it was intended to be a statute of limitations. See House Judiciary Committee Minutes on Senate Bill 2049, Forty-Third Session, February 26, 1973; North Dakota Legisla-

tive Council Minutes of the Committee on the Judiciary "B," June 20–21, 1972.

**9.** We assume that the trial court decided the motion on that ground since the trial court merely denied the motion without giving any reasons for its action. NDRCrimP 12(e) provides that when factual issues are involved in determining a motion, the court shall state its

reasons stated hereafter we conclude that the State's argument was legally unsound and that the trial court erred in accepting either it or the record as a basis for its denial of Tibor's motion.

■ Section 12.1–20–01(3) does not define the phrase "persons specifically interested in the victim." One of the statute's intended purposes is to protect the child, however imperfect the means, by extending the absolute three months from occurrence limitation, applicable to adult victims, to three months from acquiring knowledge of occurrence. We therefore interpret that phrase functionally to mean a person, interested in the child's welfare, who, by virtue of his or her relationship with the child and the confidence thereby enjoyed, is more likely than others to learn of the alleged crime. Proof of such an amorphous standard depends necessarily on the facts and circumstances of each particular case. The nature of the relationship, the manner of learning of the offense, the reasons for reporting it or not, are but some of the facts to be established. A relative may qualify as may others.

■ The State, by relying exclusively on the insufficient legal argument that a sister of the accused cannot be specifically interested in the alleged victim, failed to meet its burden of proving either compliance with the three-month reporting requirement or an exception to it. The trial court therefore erred in denying Tibor's motions on the ground advanced by the State or on the record which sufficiently raised the issue.

■ Generally, interlocutory orders are not final, and thus may be reconsidered by the court on its own motion or upon motion by the parties. *See, e.g., United States v. Raddatz*, 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980) (court may reconsider suppression motion); *see generally* Wright, Federal Practice and Procedure: Criminal 2d ¶ 676. The trial court's erroneous deni-

essential findings on the record. We restate our commitment to the policy that there be a clear statement of the reasons for such an order.

als of Tibor's motions were not final orders and are therefore subject to reconsideration. We instruct that upon remand, pursuant to NDRAppP 35(d), an evidentiary hearing be held on the factual issues raised by Tibor's motion to dismiss for untimely reporting.

The judgment of dismissal on the ground of unconstitutionality is reversed and the case is remanded for hearing on the motion to dismiss for untimely reporting and, if appropriate, for trial.

ERICKSTAD, C.J., and VANDE WALLE and GIERKE, JJ., concur.

MESCHKE, J., concurs in the result.

This will serve litigants and judges far better than does a cryptic one-line denial.