CITY OF FARGO, Plaintiff
and Appellee,

v.

Jimmie Earl STENSLAND, Defendant
and Appellant.

CITY OF FARGO, Plaintiff
and Appellee,

v.

Donald KVANT, Defendant
and Appellant.

Cr. Nos. 920064, 920065.

Supreme Court of North Dakota.

Nov. 24, 1992.

Kirschner Law Office, Fargo, for defendants and appellants; argued by William Kirschner.

Thomas J. Gaughan (argued), City Atty., Fargo, for plaintiff and appellee.

Elaine Ayers, Asst. Atty. Gen., Bismarck, amicus curiae, submitted on brief.

JOHNSON, Justice.

Jimmie E. Stensland and Donald L. Kvant make a consolidated appeal from judgments of the County Court of Cass County dated February 27, 1992, and March 3, 1992, respectively. The judgments[1] arose from guilty pleas to driving under the influence charges submitted pursuant to conditional plea agreements. We affirm.

Stensland was arrested at approximately 1:05 a.m. by Fargo city police on August 18, 1991, for driving under the influence of intoxicating liquor and with a blood-alcohol content of .10% or greater, in violation of Fargo city ordinances. He was taken to the Dakota Hospital emergency room and received a blood test at approximately 1:47 a.m. The test revealed Stensland's blood-alcohol content was .10%.

Kvant was arrested at approximately 1:30 a.m. on October 17, 1991, by Fargo city police for being in actual physical control of a motor vehicle while under the influence of intoxicating liquor and with a blood-alcohol content of .10% or greater, in violation of Fargo city ordinances. He too was taken to the Dakota Hospital emergency room and received a blood test at approximately 2:01 a.m. The test revealed his blood-alcohol content was .14%.

Stensland and Kvant pleaded not guilty and demanded jury trials. Stensland then moved the trial court to dismiss the charges against him on the grounds that N.D.C.C. § 39–08–01(1)(a),[2] incorporated by reference into Fargo city ordinance 8–0310, violates substantive due process standards. In the alternative, Stensland sought to bar the use of jury instructions containing the language of N.D.C.C. § 39–20–07(3)[3] on the grounds the statute is unconstitutionally overbroad.

Stensland based his motion on the claim that the statutes criminalize constitutionally protected activity because they punish anyone who has a blood-alcohol content of .10% or more within two hours of driving whether or not the person's blood-alcohol

---

1. The appellants' notices of appeal state they are appealing from judgments entered on March 3, 1991, while the record contains only orders for judgment. We believe, however, that the trial court intended the orders for judgment to operate as final judgments. The orders incorporate the conditional plea agreements, join the cases, and impose sentence upon the appellants pending this appeal. Accordingly, we will treat the orders as final judgments. We have made similar rulings in civil matters. *See Eisenzimmer v. City of Balfour,* 352 N.W.2d 628 (N.D.1984) [appeal from judgment, where only order for judgment existed, was treated as appeal from final order]; *Martinson Bros. v. Hjellum,* 359 N.W.2d 865 (N.D.1985) [appeal from order for judgment, where judgment was entered, treated as an appeal from the judgment].

2. N.D.C.C. § 39–08–01(1)(a) states:

1. A person may not drive or be in actual physical control of any vehicle upon a highway or upon public or private areas to which the public has a right of access for vehicular use in this state if any of the following apply:
   a. That person has a blood alcohol concentration of at least ten one-hundredths of one percent by weight at the time of the performance of a chemical test within two hours after the driving.

3. N.D.C.C. § 39–20–07(3) states:

3. A person having an alcohol concentration of at least ten one-hundredths of one percent by weight at the time of the performance of a chemical test within two hours after driving or being in physical control of a vehicle is under the influence of intoxicating liquor at the time of driving or being in physical control of a vehicle.

content met or exceeded the limit at the time they actually drove. In his case, Stensland claimed that at the time he drove his blood-alcohol content was below .10%, but rising. By the time he was tested, approximately 35 minutes later, his blood-alcohol content met the statutory limit.

The trial court denied Stensland's motion at a pretrial hearing dated January 17, 1992. Subsequent to the hearing, Stensland offered and the trial court accepted a conditional plea of guilty, pursuant to N.D.R.Crim.P. 11(a)(2). The court also agreed to joinder of Kvant's pending case for this appeal. On appeal, Stensland and Kvant contend that N.D.C.C. §§ 39–08–01(1)(a) and 39–20–07(3) are unconstitutional as they are overbroad and violate their substantive due process rights guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 12 of the North Dakota Constitution. The State of North Dakota has filed an amicus curiae brief and joins the city of Fargo in opposing this appeal.

■ The first issue we must examine is the appellants' claim that N.D.C.C. §§ 39–08–01(1)(a) and 39–20–07(3) are unconstitutionally overbroad. The doctrine of overbreadth prohibits the law from criminalizing constitutionally protected activity. *State v. Tibor*, 373 N.W.2d 877, 880 (N.D. 1985), "A governmental purpose to control or prevent activities constitutionally subject to state regulations may not be achieved by means which sweep unnecessarily broad and thereby invade the area of protected freedoms." *Zwickler v. Koota*, 389 U.S. 241, 250, 88 S.Ct. 391, 396, 19 L.Ed.2d 444, 451 (1967); cited in *State v. Tibor, supra*. In reviewing overbreadth claims, we first consider whether the statute infringes upon a "substantial amount of constitutionally protected conduct." *Village of Hoffman Estates v. Flipside*, 455 U.S. 489, 494, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362, 368 (1982).

Stensland and Kvant contend that N.D.C.C. §§ 39–08–01(1)(a) and 39–20–07(3) are overbroad because the statutes criminalize the constitutionally protected activity of intrastate travel by automobile. The

appellants base their argument on grounds that a blood-alcohol test as described by N.D.C.C. § 39–20–07 does not reflect the actual blood-alcohol content of the person at the time of the offense. They reason that since the statutes allow those who drive with a blood-alcohol content below .10% to be punished, the statutes are unnecessarily broad.

The appellants base their contention that driving is a fundamental right on the Third Circuit Court of Appeals' decision in *Lutz v. City of York*, 899 F.2d 255 (3rd Cir. 1990). In *Lutz*, the Court reviewed a constitutional challenge to a York, Pennsylvania, city ordinance that outlawed "cruising." Cruising consisted of driving repeatedly around a loop of public roads. The city maintained cruising threatened public safety as streets often became impassable due to the traffic it generated. The plaintiffs alleged that the ordinance infringed upon their fundamental right to travel. The court held that under the due process clause of the Fourteenth Amendment, the "right to move freely about one's neighborhood or town, even by automobile, is indeed 'implicit in the concept of ordered liberty' and 'deeply rooted in the Nation's history.'" *Id.* at 268 (citations omitted). The court, however, upheld the ordinance as a reasonable time, place, and manner restriction. *Id.* at 270.

Stensland and Kvant urge us to adopt *Lutz* and find that N.D.C.C. §§ 39–08–01(1)(a) and 39–20–07(3) infringe upon their fundamental right to intrastate travel by automobile. We decline to do so as it is clear the appellants' argument is misplaced. What they urge us to do, in effect, is to find there is a constitutional right to drink and drive as long as a person's blood-alcohol content does not meet or exceed the statutory blood-alcohol content limit while operating or controlling a vehicle. No court has ever recognized such a right. *See Fuenning v. Super. Ct. In and For Cty. of Maricopia*, 139 Ariz. 590, 680 P.2d 121, 128 (1983); *State v. Chirpich*, 392 N.W.2d 34, 37 (Minn.App.1986) *cert. denied*, 481 U.S. 1015, 107 S.Ct. 1891, 95 L.Ed.2d 498 (1987).

■ Since Stensland and Kvant fail to demonstrate that the conduct for which

they are being prosecuted is constitutionally protected activity, we conclude they lack standing to challenge the statutes on overbreadth grounds as applied to their conduct. We also decline to review the statutes based upon drinking after driving hypotheticals posed to us by the appellants. As a general rule, "a person to whom a statute may constitutionally be applied cannot challenge that statute on the grounds it may conceivably be applied unconstitutionally to others." *State v. Unterseher*, 255 N.W.2d 882, 886 (N.D.1977).

■ While we recognize that under certain conditions a party may acquire third party standing to challenge the constitutionality of a statute, the appellants fail to demonstrate that such an exception applies to them. In *State v. Tibor, supra*, at 881, we discussed several situations where third party standing is justified. First, third party standing exists where "there is a close relationship between the litigant's rights and the rights of a third party such that the litigant is fully, or very nearly, as effective a proponent of those rights as the third party." *See e.g., Singleton v. Wulff*, 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976). Third party standing may also be justified where individuals not party to a particular suit stand to lose by its outcome and yet have no effective avenue of preserving their rights. *See e.g., Barrows v. Jackson*, 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953). Finally, third party standing is justified where speech protected by the First Amendment is infringed upon by the challenged statute. *See e.g., Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). Here Stensland and Kvant do not share a relationship with a third party that justifies third party standing nor are they relying on the constitutional rights of nonlitigants who lack an effective avenue of preserving their own rights. Furthermore, the challenged statutes do not infringe upon the First Amendment.

■ Stensland and Kvant also claim that their rights to substantive due process are violated by the statutes. This Court has never abandoned substantive due process as a constitutional standard. *Arneson v. Olson*, 270 N.W.2d 125, 132 (N.D.1978). When reviewing substantive due process arguments not involving fundamental rights, we look to see if the State acts in an arbitrary or unreasonable manner in exercising its police power. *Id.* at 133. To declare a statute unconstitutional on substantive due process grounds, "it must appear that the Legislature had no power to act in the particular matter or, having power to act, that such power was exercised in an arbitrary, unreasonable, or discriminatory manner and that the method adopted has no reasonable relation to attaining the desired result." *Menz v. Coyle*, 117 N.W.2d 290, 299 (N.D.1962).

■ Stensland and Kvant contend the statutes are unreasonable because they allow convictions for driving under the influence where persons were not under the influence at the time they operated or controlled a vehicle. They further contend the statutes are arbitrary because a conviction might hinge on the time a blood-alcohol content test is administered. We disagree.

It is true that a person with a blood-alcohol content below .10% while driving may be convicted under the challenged statutes due to the time delay between arrest and testing. The appellants, however, miss the point. The precise blood-alcohol content at the time of operation or control is not an element of the per se offense. The legislature, in adopting the statutes, apparently seeks to deter persons who consume a substantial amount of alcohol from driving. This may lead to convictions of those who drive, for example, with a blood-alcohol content of .09%. This result, however, is not unreasonable or arbitrary. In enacting the per se offense the legislature considered testimony regarding impairment levels and factors that affect alcohol absorption and reduction rates. House Judiciary Minutes, March 1, 1983, SB2373.[4] The legislature could reasonably conclude that those who drive a vehicle with a blood-alcohol content that is .10% or greater, within two hours after relinquishing control of a vehicle, pose an unreason-

---

4. Legislative history also indicates that Dr. Rao,

the state toxicologist, believed that all drivers

able risk to public safety. The statutes are rationally related to removing the risk. *See Erickson v. Municipality of Anchorage*, 662 P.2d 963, 969 (Alaska App.1983) (Singleton, J., concurring); *Knapp v. Miller*, 165 Ariz. 527, 799 P.2d 868, 872 (App. 1990). While it is true the time of testing may lead to convictions of some persons who had a blood-alcohol content below .10% at the time of operation or control, it is equally true that the time delay between arrest and testing will allow some persons who drove with a blood-alcohol content of .10% or more to escape conviction. Such results are unavoidable since an arrest supported by probable cause must occur prior to administering a blood-alcohol content test. *See State v. Taylor*, 132 N.H. 314, 566 A.2d 172, 174–75 (1989). As a result, we conclude that N.D.C.C. §§ 39–08–01(1)(a) and 39–20–07(3) do not violate the appellants' substantive due process rights. The judgments are affirmed.

ERICKSTAD, C.J., and MESCHKE, LEVINE and VANDE WALLE, JJ., concur.

suffer some impairment at .10% blood-alcohol content and that a blood-alcohol content measured two hours after arrest would closely correspond to the level at the time of arrest. From this the legislature could assume the two hour time frame for testing will identify those who are a risk to public safety regardless of what their blood-alcohol content was at the time of operation or control.