663 A.2d 712

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**James Irvin BREHM, Jr., Appellant.**

Superior Court of Pennsylvania.

Submitted April 24, 1995.

Filed Aug. 1, 1995.

140

Timothy L. Clawges, Public Defender, Carlisle, for appellant.

Jamie M. Keating, Asst. Dist. Atty., Carlisle, for Com., appellee.

Before McEWEN, CIRILLO and POPOVICH, JJ.

POPOVICH, Judge.

This case involves an appeal from the judgment of sentence (1–2 years imprisonment [1]) for Driving While Under the Influence of Alcohol (75 Pa.C.S.A. § 3731(a)(5)) by the appellant, James Irvin Brehm, Jr. We affirm.

The facts are undisputed: At 11:00 p.m. on the 18th day of June, 1993, Carlisle Borough Police Officer Alan R. Mace was on patrol and observed that the motorcycle driven by the appellant did not have a license plate. The officer pursued the appellant for 2½ blocks with lights activated.

When the appellant came to a stop, the officer approached and "detect[ed] an odor of an alcoholic beverage emanating from the mouth" of the appellant. N.T. 34. He also observed that the appellant had glassy eyes and his speech was slow. A "standard" field sobriety test was administered, following which the appellant was arrested and transported to the local hospital to have his blood drawn. Prior thereto, the appellant was advised of Pennsylvania's Implied Consent Law, and he agreed to have his blood drawn, which took place at 11:40 p.m. Thereafter, the appellant was taken to police headquarters for processing.

---

1. The appellant was also found guilty of the summary offense of driving while under suspension, for which he received a sentence of 90 days imprisonment to be served consecutively to the DUI conviction.

 Service of sentence was suspended pending the outcome of this appeal.

The appellant was charged formally with violations of Subsections (a)(1) and (a)(4) of Section 3731, along with the summary offense of Driving While Under Suspension (75 Pa.C.S.A. § 1543). Following the preliminary hearing but before trial, the District Attorney amended the Criminal Information to charge a violation of Subsection (a)(5) of Section 3731. After a jury trial, the appellant was found guilty of violating Sections 3731(a)(5) and 1543. Sentence was imposed, and this appeal followed.

The first issue to be addressed attributes the trial court with the commission of error in permitting the Criminal Information to be amended by the District Attorney to include a violation of 75 Pa.C.S.A. § 3731(a)(5).

In *Commonwealth v. Slingerland,* 358 Pa.Super. 531, 518 A.2d 266 (1986), the defendant was charged with violating Section 3731(a)(1). After a preliminary hearing, the charge was held over for court. This was followed by the Commonwealth filing an Information charging the defendant with violating Subsection (a)(1) and (a)(4) of Section 3731. The defendant was found guilty of (a)(4), but acquitted of the (a)(1) charge. On appeal, this Court ruled that Subsections (a)(1) and (a)(4) were cognate, and, therefore, the District Attorney acted properly in adding (a)(4) to the Information even though the offense had not been charged in the criminal complaint.

In *Commonwealth v. Jacobs,* 433 Pa.Super. 411, 640 A.2d 1326 (1994), this Court upheld the right of the District Attorney to include in the Information a charge for violating 75 Pa.C.S.A. § 3731(a)(4), even though that charge was dismissed at the preliminary hearing by a District Justice since the bound-over charge of violating Section 3731(a)(1) and the dismissed charge of violating Section 3731(a)(4) were cognate offenses.

Consistent with *Jacobs* and *Slingerland,* we extend their rationale to encompass Subsection (a)(5) of Section 3731 within the ambit of "cognate" offenses embracing Subsections (a)(1) and (a)(4) of Section 3731. Each subsection is aimed at penalizing the operator of a vehicle where his/her blood alco-

hol level impairs the ability to drive, is above a certain level and is tested within a specified period of time.

Section 3731(a)(1), (4) and (5) have the laudatory objective of curbing the senseless injury and death that invariably results from the operation of motor vehicles by intoxicated individuals. Each subsection effects that goal by criminalizing separate and distinct conduct on a continuum aimed at thwarting operation of a motor vehicle by an intoxicant. Because there is a common thread which runs through Subsections (a)(1), (4) and (5), i.e., eliminating the carnage on our highways caused by drunken drivers, we hold that (a)(5) is "cognate" to (a)(1) and (a)(4). *Jacobs*, supra, at 411, 640 A.2d 1326; *Slingerland*, supra, at 531, 518 A.2d 266.

Instantly, the criminal complaint charged the appellant with, *inter alia*, violations of 75 Pa.C.S.A. § 3731(a)(1) and (a)(4), both of which were held for court following the preliminary hearing. However, with the drafting of the Criminal Information by the District Attorney, he added the (a)(5) charge to the list of offenses against the appellant.

■ Albeit the elemental aspects of the offenses listed in Subsections (a)(1), (a)(4) and (a)(5) are not synonymous, they do share a commonality of objective and spring from the single concern of keeping (and penalizing) the motorist who has consumed alcohol to a degree rendering his/her driving hazardous off the roadway. We find, therefore, that the criminal complaint charged Brehm with driving while under the influence of alcohol to an extent which rendered him incapable of safe driving and having a blood alcohol reading of .10 percent or greater were sufficient to permit the District Attorney to add to the Criminal Information the cognate offense of driving while the appellant's blood alcohol content exceeded .10 percent, a reading which was obtained within 3 hours after the accused operated the vehicle.

■ Likewise, the appellant's contention that the absence of a preliminary hearing, to assess the *prima facie* level of proof required to be established by the Commonwealth as to Section 3731(a)(5) in order to hold it for court, constitutes a violation of his due process rights is meritless.

In this jurisdiction, " 'once a defendant has gone to trial and been found guilty of a crime, any defect in the preliminary hearing is rendered immaterial.' ... Where, as in the instant case, 'it is determined at trial that the evidence of the Commonwealth is sufficient to be submitted to the jury, then any deficiency in the presentation before the district justice would have been harmless.' " *Jacobs,* supra, 433 Pa.Super. at 420, 640 A.2d at 1330 (Citations omitted). Such is the case here.

The final issue raised urges that 75 Pa.C.S.A. § 3731(a)(5) violates the appellant's due process rights under the United States and Pennsylvania Constitutions "in that it shifts the burden of proof to a criminal defendant, elevates that burden, creates an impermissible presumption of guilt, is overbroad and/or lacks a rational relationship to a legitimate state interest." [2] Appellant's Brief at 4.

When the argument section of the appellant's brief is examined, we find that the constitutional challenge to Section 3731(a)(5) [3] is refined to claims that it is "overbroad" in that it does not give notice of the conduct prohibited; requires the presentment of a defense which shifts the burden of proof from the Commonwealth to the defendant; "increases" the burden from one "beyond a reasonable doubt" to a "prepon-

**2.** In *Commonwealth v. Rishel,* 441 Pa.Super. 584, 658 A.2d 352 (1995), this Court addressed some, but not all, of the constitutional challenges presented by the appellant here and found the same to be meritless. We now add to the *Rishel* analysis by upholding the constitutionality of Section 3731(a)(5).

**3.** Section 3731(a)(5) reads:
(a) Offense defined.—A person shall not drive, operate or be in actual physical control of the movement of any vehicle ...
(5) if the amount of alcohol by weight in the blood of the person is 0.10% or greater at the time of a chemical test of a sample of the person's breath, blood or urine, which same is:
(i) obtained within three hours after the person drove, operated or was in actual physical control of the vehicle; or
(a.1) Defense.—It shall be a defense to a prosecution under subsection (a)(5) if the person proves by a preponderance of the evidence that the person consumed alcohol after the last instance in which he drove, operated or was in actual physical control of the vehicle and that the amount of alcohol by weight in his blood would not have exceeded 0.10% at the time of the test but for such consumption.

derance of the evidence" and is not rationally related to a legitimate state purpose. *Id.* at 10–13.

Our analysis begins with the strong presumption of constitutionality and the heavy burden of persuasion upon one who challenges the constitutionality of an Act of the General Assembly. Accordingly, legislation will not be declared unconstitutional unless it "clearly, palpably and plainly" violates the constitution.

Moreover, it has been said that probably the most important function of government is the exercise of the police power for the purpose of preserving the public health, safety and welfare, and it is true that, to accomplish that purpose, the legislature may limit the enjoyment of personal liberty and property. * * * The police powers of the Commonwealth are particularly broad in matters pertaining to the safety and efficient functioning of the highways, and perhaps strongest in matters pertaining to the sale, consumption and regulation of alcoholic beverages.

*Commonwealth v. Mikulan,* 504 Pa. 244, 470 A.2d 1339, 1340–41 (Citations omitted; footnote omitted).

█ With the preceding in mind, we begin our analysis with the appellant's "overly broad" argument regarding the alleged lack of notice of the conduct proscribed by Section 3731(a)(5). In reviewing "overbreadth" claims, we first consider whether the statute infringes upon a "substantial amount of constitutionally protected conduct." *Village of Hoffman Estates v. Flipside,* 455 U.S. 489, 494, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982). Before doing so, however, a review of Section 3731(a)(5) is in order. It reads:

A person shall not drive, operate or be in actual physical control of the movement of any vehicle ...

(5) if the amount of alcohol by weight in the blood of the person is 0.10% or greater at the time of a chemical test of a sample of the person's breath, blood or urine, which sample is:

(i) obtained within three hours after the person drove, operated or was in actual physical control of the vehicle. . . .

75 Pa.C.S.A. § 3731(a)(5).

■ Here, it is to be observed that the Commonwealth, in the exercise of its police powers, has a legitimate interest in enacting legislation controlling and regulating drunk driving. See *Mikulan,* supra. And the appellant cites no authority, nor have we been able to find any, for the proposition that driving while under the influence of alcohol is constitutionally protected. *City of Fargo v. Stensland,* 492 N.W.2d 591, 593 (N.D.1992); *State v. Chirpich,* 392 N.W.2d 34, 37 (Minn.Ct. App.1986). Moreover,

... there is no constitutional, statutory or common law right to the consumption of *any* quantity of alcohol before driving and there is little doubt that the legislature could, if it so chooses, prohibit driving within a certain reasonable time after drinking *any* amount of alcohol (so long as the prohibition was rationally related to the legitimate legislative purpose).

*Mikulan,* 504 Pa. at 254, 470 A.2d at 1344 (Citations omitted; emphasis in original). The reference in *Mikulan* to the Legislature having the authority to pass restrictions on the consumption of alcohol came to fruition with Section 3731(a)(5)'s time constraint, and we find that there is a rational relationship between the prohibition (of not having a blood alcohol reading of .10 percent or greater within 3 hours after ceasing to drive) and the legitimate state purpose of keeping such individuals who exhibit such characteristics off the roadway as a public hazard.

The Supreme Court of North Dakota has held that its state's drunken driving law, which is similar to that under scrutiny here, passed constitutional muster under the "rational relationship" test. In doing so, the court made comments germane to our analysis here; to-wit:

It is true that a person with a blood alcohol content below .10% while driving may be convicted under the challenged

statutes due to the time delay between arrest and testing. The appellants, however, miss the point. The precise blood alcohol content at the time of operation or control is not a element of the per se offense. The legislature, in adopting the statutes, apparently seeks to deter persons who consume a substantial amount of alcohol from driving. This may lead to convictions of those who drive, for example, with a blood-alcohol content of .09%. This result, however, is not unreasonable or arbitrary. In enacting the per se offense the legislature considered testimony regarding impairment levels and factors that affect alcohol absorption and reduction rates. House Judiciary Minutes, March 1, 1983, SB2373. The legislature could reasonably conclude that those who drive a vehicle with a blood-alcohol content that is .10% or greater, within two hours after relinquishing control of a vehicle, pose an unreasonable risk to the public safety. The statutes are rationally related to removing the risk. *See Erickson v. Municipality of Anchorage*, 662 P.2d 963, 969 (Alsaka App.1983) (Singleton, J., concurring); *Knapp v. Miller*, 165 Ariz. 527, 799 P.2d 868, 872 (App. 1990).

*City of Fargo,* supra, 492 N.W.2d at 594–95.

■ Albeit it is true that the time of testing may lead to convictions of some individuals who had a blood-alcohol level below .10% at the time of the operation or control of the vehicle, it is also likely that the time delay between arrest and testing will permit some individuals who drove with a blood-alcohol content of .10% or more to avoid conviction. Nonetheless, "[s]uch results are unavoidable since an arrest supported by probable cause must occur prior to administering a blood-alcohol content test." *Id.* Consequently, we find that Section 3731(a)(5) is not "overly broad" and is rationally related to a legitimate state interest of protecting its citizenry against the devastation caused by drunken drivers. See *Mikulan,* supra, at 504 Pa. 244, 470 A.2d 1339 (Discussing constitutionality of Section 3731(a)(4)).

We next turn our attention to the claim that Subsection (a.1) of Section 3731(a)(5) [4] shifts the burden of proof to the defendant to show that if he was .10% or more within 3 hours of driving, that he was not .10% or more at the time of driving. A similar argument was rejected by the Court of Appeals of Arizona in *State v. Martin*, 174 Ariz. 118, 847 P.2d 619, 624 (1992) which wrote that:

> ... in *Cacavas [v. Bowen*, 168 Ariz. 114, 811 P.2d 366 (1991)] ... this court concluded that ... section 28–692(A)(2) is violated by "having the requisite BAC not only at the time of operating or controlling the motor vehicle *but also within two hours thereafter." Id.,* 168 Ariz. at 117, 811 P.2d at 369 ... We agree.... The essential element of 28–692(A)(2) is violated by "having the requisite BAC not only at the time of operating or controlling the motor vehicle *but also within two hours thereafter." Id.,* 168 Ariz. at 117, 811 P.2d at 369 ... We agree.... The essential element of 28–692(A)(2) is having a BAC of 0.10 percent within two hours after driving. Section 28–692(B) neither establishes that element nor places the burden of disproving it on the defendant. To convict a defendant of a violation of section 28–692(A)(2), the state must still prove beyond a reasonable doubt that defendant's blood alcohol concentration was 0.10 or more within two hours of driving. [Emphasis in original]

As in *Martin*, we find that the prosecution has the never-shifting burden of proving every essential element of a crime. See *Commonwealth v. Rose*, 457 Pa. 380, 321 A.2d 880, 884 (1974); *Commonwealth v. McFarland*, 252 Pa.Super. 523, 382 A.2d 465, 468 (1977). Here, it is having a .10% or greater blood-alcohol level within 3 hours after driving. In rebuttal, the defendant may offer, *if he so chooses,* evidence that he consumed alcohol *after* driving which caused his blood alcohol level to increase to a .10% or greater level. This affirmative defense is, as has been traditionally acknowledged in this Commonwealth, the responsibility of a defendant to prove by a preponderance of the evidence. See *Commonwealth v. Reilly*, 519 Pa. 550, 549 A.2d 503 (1988) (insanity); *Commonwealth v.*

4. See note 3, supra.

150 

*Cropper*, 463 Pa. 529, 345 A.2d 645, 649 n. 8 (1975) (Listing defenses to be proven by defendant by preponderance of evidence); *Commonwealth v. Mance*, 422 Pa.Super. 584, 619 A.2d 1378 (1993) (Entrapment); *McFarland,* supra, at 523, 382 A.2d 465 (Weapon lawfully possessed).

██ Instantly, Subsection (a.1) of Section 3731(a)(5) (consuming alcohol after driving but within 3 hours of testing caused .10% or greater reading of blood-alcohol) *is not an element of the offense* to be disproven by the prosecution. See *Martin,* supra. Since (a.1) is not an element of the crime, the defendant does not have any burden of persuasion as to it. *Rose,* supra; *Martin,* supra. And, because the prosecution still must prove beyond a reasonable doubt that the blood-alcohol concentration was .10% or more and expert testimony is available to both sides on the effects of alcohol on the blood over a period of time,[5] there is no impermissible burden shift to the defendant in a prosecution under Section 3731(a)(5). See *Martin,* supra; *Chirpich,* supra.

Lastly, inasmuch as the appellant's "overly broad" contention incorporates elements of a "lack of notice" equivalent to a "void-for-vagueness" argument, we will respond to such a claim.

 The void-for-vagueness doctrine, as extensively developed by the United States Supreme Court, is a due process doctrine incorporating notions of fair notice and warning. *Smith v. Goguen,* 415 U.S. 566, 572, 94 S.Ct. 1242, 1246, 39 L.Ed.2d 605 (1974); *Commonwealth v. Potts,* 314 Pa.Super. 256, 460 A.2d 1127, 1133 (1983). Its purpose is to protect against statutes which preclude drivers from ascertaining whether their conduct comes within the ambit of the law or whether they, unknowingly, may expose themselves to civil or criminal repercussions by their actions. See *Martin,* supra; *People v. Lebron,* 130 Misc.2d 831, 501 N.Y.S.2d 975 (1986).

5. Any "self-incrimination" argument posited by the appellant is rendered nugatory by the availability of expert testimony to the effect of alcohol consumption on the body. Although defendant would have to testify to consuming alcohol that does not violate a right against self-incrimination where the testimony will be for exculpatory purposes.

As a corollary thereto, fundamental notions of due process require that the law enforcement community must be able to administer the law fairly. *Lebron,* supra.

The appellant asserts that the statute does not provide notice of the conduct proscribed. Section 3731(a)(5) was added to the arsenal of weapons to combat drunken driving and protect the public: driving to a point of being incapable of operating a vehicle safely (Section 3731(a)(1)); driving while one's blood-alcohol level is .10% or greater (Section 3731(a)(4)).

By creating a specific, objective criterion for a predefined blood-alcohol content (BAC) with which to compare an individual's BAC, the statute provides "notice" of the illegal behavior with sufficient particularity. *Martin,* supra. Also, the verbiage "within three hours after the person drove, operated or was in actual physical control of the vehicle" provides specific and objective guidelines to the potential offender and to those charged with enforcing the law. *Id.*

It would appear that Section 3731(a)(5) is a response by the Legislature to the Pennsylvania Supreme Court's *Commonwealth v. Modaffare,* 529 Pa. 101, 601 A.2d 1233 (1992) and *Commonwealth v. Jarman,* 529 Pa. 92, 601 A.2d 1229 (1992) decisions calling for "relation back" evidence linking the .10% or greater blood-alcohol test results to the period of time the defendant was operating the vehicle to obtain a conviction. Now, with (a)(5) no "relation back" proof is necessary to establish a violation of that subsection because the Legislature has concluded that a person with a BAC of .10% or greater within the 3–hour period poses a sufficient danger to the public to justify broadening the conduct. See *Martin,* supra.

From applying a common sense reading to the statute under attack (see 1 Pa.C.S.A. § 1921), we find that the act gives fair notice to a driver who has consumed alcohol that testing may take place over a 3–hour period and that a BAC of .10% within that time-frame violates Section 3731(a)(5). *Id.* It also allows those assigned the responsibility of enforcing the law a clear standard for measuring violators. As such, we find no merit to the appellant's "lack of notice" averment.

Finding no merit to any of the arguments presented for our scrutiny by the appellant, we affirm the judgment of sentence.[6]

Judgment of sentence affirmed.

McEWEN, J., files a dissenting statement.

McEWEN, Judge, dissenting.

While the expression of the majority reveals a particularly keen perception and provides a most persuasive presentation of view, I am compelled to this statement of dissent.

*Nunc pro tunc* is a most familiar phrase in the language of the law and means:

Now for then. *In re Peter's Estate,* 175 Okl. 90, 51 P.2d 272, 274. A phrase applied to acts allowed to be done after the time when they should be done, with a retroactive effect, i.e., with the same effect as if regularly done.

Nunc pro tunc signifies now for then, or, in other words, a thing is done now, which shall have same legal force and effect as if done at time when it ought to have been done. *State v. Hatley,* 72 N.M. 377, 384 P.2d 252, 254.

Black's Law Dictionary 964 (5th ed. 1979).

*Ex post facto* is a hallowed phrase in the language of the law, and even so ancient that the nobles, when they imposed the Magna Carta upon King John in 1215, used the phrase to proscribe the subsequent declaration of earlier conduct as criminal. Surely, *nunc pro tunc* would also have been addressed by the lords, become part of the Magna Carta, and attained hallowed historical stature had the king been behead-

6. Briefly, we wish to reply to the appellant's contention that the burden of proof is *increased* from that of "beyond a reasonable doubt" to a "preponderance of the evidence" under Section 3731(a)(5)(a.1). This is erroneous.

The preponderance of the evidence standard is a step down from the higher beyond a reasonable doubt level of proof. See Black's Law Dictionary 161 & 1182 (6th ed. 1990). Thus, the level of proof is decreased not increased in the wake of the preponderance of the evidence standard referred to in Section 3731(a)(5)(a.1) if the defendant wished to put on a defense.

ing subjects for a crime because they *later smelled guilty*—but even King John was not beheading citizens for acts that were *ex post facto nunc pro tunc.*

Thus, as admirable and necessary as is the mission of advocates against drunk driving and as worthy as are the advocates themselves, I am compelled, the Supreme Court of North Dakota notwithstanding, to the conclusion that the current text of subsection 5 of Section 3731 of the Vehicle Code casts a net beyond any lawful perimeter since it impermissibly encroaches upon the rights of an accused by relieving the prosecutor of establishing that *any* amount of alcohol was in the blood of the driver *at the time the driver was operating the vehicle.*