619 A.2d 1378

**COMMONWEALTH of Pennsylvania**

v.

**Charles A. MANCE, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 14, 1992.

Filed Feb. 17, 1993.

Paul D. Boas, Pittsburgh, for appellant.

Kemal A. Mericli, Asst. Dist. Atty., Pittsburgh, for Com., appellee.

Before TAMILIA, JOHNSON and HESTER, JJ.

JOHNSON, Judge:

In this appeal we are asked to further define when police conduct during a reverse sting operation becomes so outrageous as to violate due process. A reverse sting is an undercover operation in which the government agents pretend to be selling (rather than as is the more usual case, buying) illicit drugs from the soon-to-be defendants. *United States v. Ruiz*, 927 F.2d 139 (3d Cir.1991). It is a recognized investigative tool used in law enforcement against middle-level illicit drug dealers.

Charles A. Mance appeals from the judgment of sentence following his jury convictions for criminal solicitation, 18 Pa. C.S. § 902(a), and criminal attempt, 18 Pa.C.S. § 901(a), which resulted from a reverse sting operation in which undercover law enforcement officers purported to sell him one hundred (100) pounds of marijuana. Mance was sentenced to a term of five years' probation and costs.

Mance maintains that: (1) he was entrapped as a matter of law; (2) police conduct was so outrageous it constituted a violation of due process; and, (3) he was prejudiced by the admission of irrelevant testimony concerning the drug trafficking business. Because Mance raises no claim of merit, we affirm.

Mance was telephoned in late December, 1987, or early January, 1988, by an acquaintance, Rocco Scarfone, who had become a paid informer for Detective Steven Medley, an undercover narcotics officer for the Fort Lauderdale, Florida, police. Scarfone testified that during the first telephone conversation, Mance asked him whether he knew if any marijuana was available. While Scarfone told Mance that he would see if any marijuana was available, in actuality, he reported the inquiry to Medley. Medley instructed Scarfone what Mance should be told when Scarfone called Mance back.

Scarfone testified that he had one or two additional telephone conversations with Mance before establishing a three-way telephone conversation with Medley, who pretended to be the seller of the marijuana. It is undisputed that the initial

calls between Scarfone and Mance were not recorded. There were three telephone conversations, secretly recorded, between Scarfone, Mance, and Medley. These three-way conversations disclose Mance negotiating the sale and delivery of the 100 pounds of marijuana for $50,000. Mance also agreed to fly to the Charlotte, North Carolina, airport to sample the marijuana he was buying, and to give Medley $1000 in expense money, with delivery of the 100 pounds to be made later in Pittsburgh.

The meeting at the Charlotte airport, also secretly recorded, occurred as planned. Two days later Scarfone, accompanied by various law enforcement agents, came to Pittsburgh and met with Detective William Joyce of the narcotics section of the Pittsburgh Police. Joyce became the team leader for the finale. Ostensibly arranging for the delivery of the marijuana, Scarfone, in another recorded conversation, called Mance at his home and told him where Mance could meet Scarfone and the driver (actually an undercover agent) to complete the deal. Mance came to the designated meeting spot, displayed the money, and after the government agent agreed to exchange the marijuana at Mance's house, Mance was arrested.

Mance testified that when he had first met Scarfone a number of years earlier, Scarfone bragged about his connections with organized crime and ability to supply illicit drugs. According to Mance, Scarfone had pressured him into buying some cocaine after Scarfone had provided Mance with a discounted hotel room and rental car in Florida. Through the ensuing years, Mance secured a college degree, obtained a good job with Westinghouse Electric Corporation, got married and had children. Mance claimed that Scarfone had called him some eight or ten times, starting in October, 1987. Mance testified that when Scarfone telephoned him toward the end of 1987, he told Mance that he was in financial trouble because he couldn't pay the money he owed to some "big people," who were threatening him. If Mance could help Scarfone sell their marijuana, it would reduce Scarfone's debt. Mance asserted that he agreed to purchase the marijuana in order to help Scarfone.

Initially, Mance contends that he was entrapped as a matter of law. Entrapment is defined as:

(a) **General rule.**—A public law enforcement official or a person acting in cooperation with such an official perpetrates an entrapment if for the purposes of obtaining evidence of the commission of an offense, he induces or encourages another person to engage in conduct constituting such offense by either:

(1) making knowingly false representations designed to induce the belief that such conduct is not prohibited; or

(2) employing methods of persuasion or inducement which create a substantial risk that such an offense will be committed by persons other than those who are ready to commit it.

(b) **Burden of proof.**—Except as provided in subsection (c) of this section, a person prosecuted for an offense shall be acquitted if he proves by a preponderance of the evidence that his conduct occurred in response to an entrapment

. . .

18 Pa.C.S. § 313.

The entrapment statute "places the burden of proof on the defendant and applies an objective test with regard to police conduct." *Commonwealth v. Dukeman,* 413 Pa.Super. 397, 408, 605 A.2d 418, 423 (1992). Once a defendant has properly established the defense of entrapment, "the trial court should determine the question as a matter of law wherever there is no dispute as to the operative facts relating to the defense." *Commonwealth v. Thompson,* 335 Pa.Super. 332, 341, 484 A.2d 159, 164 (1984).

In *Commonwealth v. Wright,* 396 Pa.Super. 276, 578 A.2d 513 (1990), *alloc. denied,* 526 Pa. 648, 585 A.2d 468 (1991), we set forth the standard for determining whether entrapment as a matter of law exists, stating:

Whether an "entrapment has occurred is a question for the jury, unless the evidence points to only one conclusion, in which case it may be decided as a matter of law."

\*    \*    \*    \*    \*    \*

Moreover, where there is conflicting testimony on the subject of inducement, the matter is properly left for the jury to resolve.

*Id.,* 396 Pa.Super. at 288–289, 578 A.2d at 519–520 (citations omitted). *See also Commonwealth v. Weiskerger,* 520 Pa. 305, 554 A.2d 10 (1989).

After a thorough review of the record, we conclude that Mance's argument is without merit. The testimony of the informant, Scarfone, and the testimony of Mance is in sharp conflict on the matter of whether Mance voluntarily entered into the illicit drug transaction or whether the illicit drug transaction was improperly induced by Scarfone. Scarfone's testimony was that he contacted Mance because he knew that Mance had been involved in purchasing marijuana in the past (which Mance had denied). Scarfone also testified that during his initial conversation with Mance, Mance asked Scarfone whether any marijuana was available. Moreover, the recorded conversations vividly portray Mance as an experienced marijuana dealer attempting to negotiate the sale and delivery of 100 pounds of marijuana. Detective Medley's testimony supported Scarfone's version of the deal. Mance testified that Scarfone first started calling him in late October, 1987, and called him somewhere between eight and ten times before the first recorded telephone call with Medley. Mance contends that he was induced to purchase the marijuana by Scarfone's plea for assistance in paying off the debt Scarfone owed to some "big people." Mance claimed that Scarfone coached him in what to say before the recorded telephone conversations with Medley.

Thus, the issue is whether Mance was induced to participate in the scheme. Where there is conflicting testimony on the subject of inducement, there is not, and cannot be, entrapment as a matter of law. The conflict is for the jury to resolve. *Wright, supra.* The judge properly denied Mance's motion on the basis of entrapment as a matter of law.

Next, Mance claims that the government's conduct in this case was so outrageous that it violated due process. We conclude that the facts do not support this claim.

■ "The question whether government conduct has been so outrageous as to constitute a violation of due process is a question of law to be determined by the court, not the jury." *Commonwealth v. Benchino*, 399 Pa.Super. 521, 526, 582 A.2d 1067, 1069 (1990) (citations omitted). Only in the rarest and most outrageous circumstances will government conduct in a criminal investigation be found to violate due process. *Id.* at 527, 582 A.2d at 1069.

> Before the conduct of law enforcement officials or government agents will be found to have violated due process, however, it must be shown that police conduct was "so grossly shocking and so outrageous as to violate the universal sense of justice." The establishment of a due process violation "generally requires 'proof of government *overinvolvement* in the charged crime and proof of the defendant's mere passive connection to the government orchestrated and implemented criminal activity.'" Moreover, for due process to bar a conviction, the government's involvement in the commission of the crime "must be *malum in se* or amount to engineering and direction of the criminal enterprise from beginning to end."

*Id.* (citations omitted) (emphasis in original).

This case is similar to *Benchino*. *Benchino* involved a reverse sting in which the defendant claimed that his due process rights were violated because he had been implicitly threatened by the Commonwealth's informant, to whom he owed a drug-related debt. The defendant alleged that these threats caused him to purchase drugs from an undercover narcotics agent. This court rejected Benchino's claim.

■ "[T]he mere fact that an investigation has begun without probable cause or reasonable suspicion does not violate due process." *Id.* at 527, 582 A.2d at 1070. The government does not violate due process simply by employing an undercover or reverse sting operation, or because its agents supply ingredients for commission of a crime or contraband to a defendant. *Id.* at 528, 582 A.2d at 1070.

Providing Mance with a sample of the marijuana did not offend due process. *See Commonwealth v. Delligatti,* 371 Pa.Super. 315, 538 A.2d 34 (1988), *alloc. denied,* 520 Pa. 595, 552 A.2d 250; *Benchino, supra.* Due process is not offended because the investigation began without probable cause or reasonable suspicion, nor is due process offended because it was a reverse sting operation conducted by the police. *Benchino, supra.* Moreover, Mance was not improperly induced to purchase illicit drugs even if the police gave Mance the opportunity to make a substantial profit on the transaction by offering the marijuana at $500 per pound, delivered to Pittsburgh, when marijuana was then selling in Pittsburgh on the street at $1200 to $1500 per pound. *Benchino,* 399 Pa.Super. at 525, n. 2, 582 A.2d at 1069, n. 2.

We cannot conclude that the police conduct with respect to informant Scarfone was so grossly shocking and outrageous as to violate the universal sense of justice. There is no due process violation merely because an informant receives money for cooperating in a reverse sting, even if the compensation was on a contingent basis. *Id.* at 529, 582 A.2d at 1071. Scarfone's financial interest here, the $1,500 he was subsequently paid by various law enforcement agencies, was simply a matter to be considered by the jury in determining his credibility. *Ruiz, supra.* Furthermore, we cannot conclude from the record that the government purposefully failed to preserve evidence by not recording the initial telephone conversations between Scarfone and Mance, as Mance infers. Rather than amounting to outrageous conduct, such an act would, at best, strengthen a defendant's claim that he was entrapped. *United States v. Olson,* 978 F.2d 1472, 1482 (7th Cir.1992). We observe that the jury was properly charged on entrapment, and weighed this evidence in reaching its determination that Mance had not been entrapped. We also note that at trial the government had provided an adequate explanation of the failure to record the initial telephone calls between Mance and Scarfone. "Mere negligence cannot serve as the predicate for government misconduct." *Id.*

██ The most that can be said of Scarfone's involvement is that he was an intermediary between the police and Mance. According to Mance's own testimony, Scarfone was just an acquaintance, a braggart boasting of his mob and drug connections, who had pressured Mance into buying cocaine from him a number of years earlier after he had provided Mance with a discounted hotel room and rental car in Florida. Viewed in its entirety, we do not find this to be coercive police conduct. *See Commonwealth v. Timer,* 415 Pa.Super. 376, 609 A.2d 572 (1992).

Scarfone's actions were part of the ordinary tactics in narcotics trafficking, and were necessary to maintain a credible cover. *Benchino,* 399 Pa.Super. at 529, 582 A.2d at 1070–1071. We are constrained to conclude that Mance was simply contacted and afforded the opportunity to commit the crime. Here, we cannot find the level of police overinvolvement which constitutes a violation of due process.

Finally, Mance contends that the trial court erred in admitting Detective Medley's testimony regarding the drug trafficking trade. We conclude that Mance's claim that this testimony was prejudicial and irrelevant is also without merit.

██ Matters relating to the admissibility of evidence are within the sound discretion of the trial court, and an appellate court will not reverse the trial court's ruling absent a clear abuse of discretion. *Commonwealth v. Claypool,* 508 Pa. 198, 495 A.2d 176 (1985); *Commonwealth v. Jermyn,* 516 Pa. 460, 533 A.2d 74 (1987); *Commonwealth v. Cargo,* 498 Pa. 5, 444 A.2d 639 (1982). This court has said that an abuse of discretion can be found if it appears that the trial judge admitted irrelevant evidence that was prejudicial to the accused or evidence the probative value of which was outweighed by its prejudicial impact or its tendency to suggest a decision on an improper basis. *Commonwealth v. Shain,* 324 Pa.Super. 456, 462, 471 A.2d 1246, 1248 (1984); *see also Commonwealth v. Day,* 399 Pa.Super. 399, 582 A.2d 655 (1990). Evidence is relevant if it tends to make more or less probable the existence of some fact material to the case, it tends to establish facts in issue, or it in some degree advances the inquiry and

thus has probative value.  *Shain,* 324 Pa.Super. at 462–463, 471 A.2d at 1249.  Thus, we must evaluate the relevance of the evidence admitted by the trial court's rulings and then weigh relevancy and probative value against prejudicial impact.

The record reveals that Mance failed to object to Medley's initial reference to South Florida as the hub through which marijuana is imported into the United States.  Mance did, however, object to Medley's explanation of a typical illicit drug distribution chain.  Mance argued then, as now, that the evidence was irrelevant because no marijuana actually existed.  Mance also contends that there was an unspoken inference that this evidence somehow connected him to Manual Noriega and the invasion of Panama.

We find both arguments meritless.  The evidence was inherently relevant to the jury's understanding of the facts of this case, as the prosecutor aptly noted at sidebar following Mance's objection.  Mance was buying 100 pounds of commercial grade marijuana for $50,000 from a marijuana wholesaler, clearly placing him in the distribution chain.  It does not matter that the marijuana did not materialize.  A description of the chain of marijuana distribution enabled the jury to understand the role that Detective Medley was playing in the operation, i.e., a bulk marijuana dealer from South Florida negotiating a sale to a new customer/distributor from Pennsylvania.  This evidence further clarified the recorded conversations concerning the negotiations for the sale of the marijuana.  This evidence is relevant and probative.

While relevant evidence may be inadmissible if it is too prejudicial or would tend to support a jury verdict on an improper basis, neither condition exists here.  We conclude that the evidence was properly admitted by the trial court, and find no error.

For all of the foregoing reasons, we affirm the judgment of sentence.

Judgment of sentence affirmed.