654 A.2d 591

COMMONWEALTH of Pennsylvania, Appellant,

v.

Robert Peter PHILLIPS, Appellee.

Superior Court of Pennsylvania.

Argued Nov. 15, 1994.

Filed Feb. 16, 1995.

Nancy L. Hughes, Asst. Dist. Atty., Reading, for Com., appellant.

William R. Bernhart, Reading, for appellee.

Before CAVANAUGH, POPOVICH and SAYLOR, JJ.

SAYLOR, Judge:

This is an appeal from an order entered in the Court of Common Pleas of Berks County which dismissed certain counts of the Commonwealth's amended information against Appellee, Robert Peter Phillips. We affirm.

The facts of this case are not in dispute. During the fall of 1992, the Reading Police, the Pennsylvania State Police and other law enforcement authorities set up a "reverse sting" operation, which targeted individuals in the Reading area involved in the buying and selling of stolen merchandise.[1] Scott Brenner, security chief at a local Sears store, provided the police with certain goods which were used in the operation, including a Sears VCR.

At approximately 1:30 p.m. on August 28, 1992, a police informant and an undercover state police officer went to Phillips' grocery store and sold him a new VCR in its original box, bearing a Sears label. Shortly after the transaction, Phillips contacted Sears, spoke with Scott Brenner, and asked whether any VCRs had been reported stolen or missing. Brenner told Phillips that he did not know of any missing VCRs. Phillips indicated that he had seen two men selling a Sears VCR on the streets of Reading, and asked if a stolen

1. A reverse sting is an undercover operation where government agents pretend to be selling stolen goods. *Commonwealth v. Mance,* 422 Pa.Super. 584, 619 A.2d 1378 (1993), *aff'd.* 539 Pa. 282, 652 A.2d 299 (1995).

credit card could have been used to purchase a VCR. Brenner stated that he would look into the matter.

At approximately 2:05 p.m. the same day, Phillips again called Sears and spoke with a different employee about the VCR. The employee told Phillips that he would look into the matter, and Phillips then left his name. At 3:12 p.m., Phillips called Sears a third time and spoke with Brenner. Phillips indicated that he believed the VCR to be stolen; Brenner responded that he did not know of any missing VCRs and demanded the caller's identity. Phillips told Brenner his name, that he owned a grocery store in Reading, and that on occasion he buys goods for his store which turn out to be stolen. Phillips stated that when he determines that goods are stolen, he contacts the police. He then gave Brenner a detailed description of the Sears VCR and provided his telephone number. Brenner then realized that the VCR described by Phillips was identical to the one Brenner had previously provided to the police for use in the reverse sting operation.

Approximately one hour later, Brenner telephoned Phillips and told him that the VCR was neither missing nor stolen from Sears. Phillips again asked whether Brenner could have been mistaken and offered to show the VCR to Brenner that evening. Brenner, knowing that Phillips would have recognized him from another unrelated investigation, declined the offer to meet with him.

Subsequently, Brenner contacted the police regarding his conversations with Phillips. The police told Brenner that he could say anything to Phillips provided he did not expose the reverse sting operation, and told him to document his conversations with Phillips. The police continued to target Phillips after determining that his involvement in the sale of stolen goods had not ceased.

On September 4, 1992, the police dispatched an officer to Phillips' grocery store to dissuade him from further contact with Sears. At that time, Phillips informed the officer that a VCR which he had purchased may have been stolen from

Sears. The officer ignored the concerns raised by Phillips, and told him that the police had received complaints from Sears about his harassing phone calls. Sears, however, had never complained to the police about Phillips' phone calls, and the officer's story was a fabrication. Phillips thereafter made several other purchases through the reverse sting operation.

On February 11, 1993, a criminal information was filed against Phillips and he was placed under arrest. Following a hearing, certain counts contained in the information were dismissed and the Commonwealth was subsequently given leave to file an amended information. On October 1, 1993, an amended information was filed charging Phillips with, *inter alia*, eight (8) counts of criminal solicitation to commit theft by unlawful taking or disposition, four (4) counts of criminal attempt to receive stolen property and four (4) counts of conspiracy to receive stolen property.[2] Phillips then filed an amended omnibus pretrial motion requesting that the trial court quash the amended information, issue a writ of habeas corpus and dismiss the charges. Phillips raised the defense of entrapment as a matter of law and alleged due process violations resulting from egregious police conduct. On December 7, 1993, following several extensive pretrial hearings, the trial court dismissed approximately sixty-four (64) counts, none of which are the subject of this appeal, and denied Phillips relief on the sixteen (16) counts at issue in this appeal.

On December 15, 1993, Phillips filed motions requesting, *inter alia*, the following relief: production of exculpatory evidence, a more specific bill of particulars and the dismissal of all remaining charges. At a hearing on these motions, the Commonwealth produced a copy of a six page written report submitted by Scott Brenner, which detailed Phillips' telephone contacts with Sears. The trial court then ordered a re-hearing on the claims of entrapment and due process violations. Following the re-hearing, the trial court dismissed the

2. The amended information contained a total of 100 separate counts against Phillips arising from the reverse sting operation and a separate investigation involving Phillips' alleged improper use of the electronic benefit transfer (food stamp) system; only the sixteen (16) enumerated counts are implicated in this appeal.

aforementioned sixteen (16) counts by order dated February 22, 1994.[3] This appeal by the Commonwealth followed.[4]

On appeal, the Commonwealth presents the following contentions for our review:

A.  The lower court erred in dismissing counts 66, [6]9, 70, 71, 72, 73, [74], 75, 76, 77, 78, 79, 80, 81, 83 and 85 as being violative of the due process clauses of the United States and Pennsylvania Constitutions.

B.  The lower court erred in dismissing the above listed counts as being violative of Title 18 Section 313 (entrapment) in that the facts were not sufficient to find entrapment as a matter of law.

C.  The lower court erred in dismissing the above counts in that the entrapment defense is not reviewable under pretrial habeas corpus analysis.

We first address the Commonwealth's contention that the trial court erred when it found the evidence sufficient to establish entrapment as a matter of law.[5] The defense of entrapment is defined as follows:

3.  In its opinion, the trial court noted that this order dismissed seventeen (17) counts upon the basis of entrapment and/or due process violations and inadvertently included count 67 (criminal attempt to receive stolen property), which had been withdrawn by the Commonwealth at the re-hearing.

4.  The Commonwealth proceeded to trial on the remaining counts which had not been dismissed or withdrawn. After the Commonwealth rested, the trial court granted Phillips' motion for judgment of acquittal.

5.  In its third issue on appeal, the Commonwealth contends that the trial court could not review the entrapment defense within the context of a pretrial habeas corpus proceeding. Phillips asserted this defense in his amended omnibus pretrial motion requesting that the subject counts be quashed, a writ of habeas corpus issue, and that the charges against him be dismissed. The Commonwealth argues that entrapment as a matter of law could not be raised until the conclusion of the Commonwealth's case-in-chief, and that the entrapment defense was prematurely decided. However, several pretrial hearings were held in this matter which established the operative facts regarding the conduct of the police. The Commonwealth does not contradict or dispute such facts, and does not allege the existence of facts, previously undisclosed at the pretrial hearings, which would prevent this issue from being determined as a matter of law. Accordingly, it is unreasonable to require Phillips to raise the entrapment defense in an alternative proceeding, or

**(a) General Rule.**—A public law enforcement official or a person acting in cooperation with such an official perpetrates an entrapment if for the purpose of obtaining evidence of the commission of an offense, he induces or encourages another person to engage in conduct constituting such offense by either:

(1) making knowingly false representations designed to induce the belief that such conduct is not prohibited; or

(2) employing methods of persuasion or inducement which create a substantial risk that such an offense will be committed by persons other than those who are ready to commit it.

**(b) Burden of Proof.**—Except as provided in subsection (c) of this section, a person prosecuted for an offense shall be acquitted if he proves by a preponderance of the evidence that his conduct occurred in response to an entrapment.

18 Pa.C.S. § 313.

The entrapment statute applies an objective test which focuses on the conduct and tactics of the police, rather than on the defendant's predisposition to commit a crime. *Commonwealth v. Benchino,* 399 Pa.Super. 521, 582 A.2d 1067 (1990). The defendant has the burden of proof and must show, in order to succeed on a claim of entrapment, that " 'police conduct would have induced an innocent person to commit a 'crime.' " *Commonwealth v. Benchino, supra,* 399 Pa.Super. at 533, 582 A.2d at 1073, quoting *Commonwealth v. Wilson,* 381 Pa.Super. 253, 258, 553 A.2d 452, 454 (1989).

The trial court should determine whether entrapment as a matter of law exists where the operative facts relating to the defense are not in dispute. *Commonwealth v. Mance, supra,* 422 Pa.Super. 584, 619 A.2d 1378 (1993), *aff'd.* 539 Pa. 282, 652 A.2d 299 (1995). The standard for determining whether a defendant was entrapped as a matter of law is as follows:

to delay resolution of this matter until after presentation of the Commonwealth's case-in-chief.

Whether an "entrapment has occurred is a question for the jury, unless the evidence points to only one conclusion, in which case it may be decided as a matter of law." ...

Moreover, where there is conflicting testimony on the subject of inducement, the matter is properly left for the jury to resolve.

*Commonwealth v. Mance, supra,* 422 Pa.Super. at 589–590, 619 A.2d at 1380, quoting *Commonwealth v. Wright,* 396 Pa.Super. 276, 288–289, 578 A.2d 513, 519–520 (1990).

■ In this case, the evidence was undisputed that prior to making any other purchases through the reverse sting operation Phillips had, on numerous occasions, attempted to ascertain whether the Sears VCR he had purchased from the police had been stolen. Scott Brenner, the Sears employee who was assisting the police in the reverse sting operation, assured Phillips that the VCR he purchased had not been reported missing or stolen from Sears. Brenner was told by police to say anything to Phillips so long as it did not expose the reverse sting operation. Brenner also refused to meet with Phillips to view the VCR for fear of jeopardizing the operation. Further, the police, concerned that Phillips would learn of the reverse sting operation through his repeated inquiries of Sears employees and would then refrain from additional purchases, fabricated a story that Sears had complained about his phone calls and requested that he cease further contact with Sears. The conduct of the police and Scott Brenner, who was acting as their agent, was clearly designed to induce Phillips into the belief that his purchase and retention of the Sears VCR was not unlawful, and to promote further purchases by Phillips from police officers and informants involved in the reverse sting operation.

After careful review of the record, we are satisfied that there was sufficient evidence to support the trial court's conclusion that the police conduct at issue constituted entrapment as a matter of law. Accordingly, the order dismissing

436

sixteen (16) counts of the amended information is affirmed.[6]

Order affirmed.

CAVANAUGH, J. files a Dissenting Opinion.

CAVANAUGH, Judge, dissenting:

Most respectfully, I dissent. Under the entrapment statute, a defendant has the burden of proving that a public law enforcement official, or a person acting in cooperation with such an official, induced or encouraged the defendant into engaging in conduct which constitutes a criminal offense. *Commonwealth v. Mance*, 422 Pa.Super. 584, 589, 619 A.2d 1378, 1380 (1993), *aff'd.*, 539 Pa. 282, 652 A.2d 299 (1995). "Whether an 'entrapment has occurred is a question for the jury, unless the evidence points to only one conclusion, in which case it may be decided as a matter of law.' " *Mance, quoting, Commonwealth v. Wright*, 396 Pa.Super. 276, 288–89, 578 A.2d 513, 519–520 (1990). My review of the record in this case leads me to conclude that entrapment has not been proven as a matter of law. Objectively viewing the conduct of the police, a jury could conclude that the Sears employees were not acting in cooperation with the police, or at their direction, when they repeatedly declined to confirm defendant's suspicion that the VCR was stolen. All but one of these conversations with defendant took place before police were aware that defendant had been calling Sears. Furthermore, the police did not instruct the Sears employee, who eventually contacted police, to mislead the defendant; rather, they told him that he could tell the defendant anything, so long as he did not reveal that there was an investigation. Finally, the Sears employee simply told the defendant that he did not believe the VCR to be stolen; and the employee testified that this statement was true as the VCR was accounted for, as it was one of the items which had been provided to police. Thus,

6. Because we have determined that the trial court properly found entrapment as a matter of law and dismissed the sixteen (16) counts against Phillips upon that basis, we need not address the Commonwealth's contention regarding the trial court's dismissal of those counts on alternative due process grounds.

I believe the trial court erred in concluding that entrapment had been established as a matter of law.

Additionally, because a jury question exists, this case is not a proper subject matter for a writ of habeas corpus. *See Commonwealth v. Morman,* 373 Pa.Super. 360, 541 A.2d 356 (1988) (in reviewing a petition for habeas corpus, the court determines whether the Commonwealth has sufficient evidence to establish a *prima facie* case that a crime has been committed and that the accused committed the crime). The evidence presented by the Commonwealth at the hearing below was clearly sufficient to establish a *prima facie* case against defendant. Accordingly, I would reverse the order of the trial court and remand this case for trial.