Gerald J. SMITH, Petitioner,

v.

John McCOLLOUGH, District Attorney of Carbon County, and Michael Fisher, Respondents.

No. Civ.3:97–CV–1284.

United States District Court, M.D. Pennsylvania.

Jan. 26, 1999.

Thomas A. Thornton, F.P.D. in Harrisburg, PA, for petitioner.

Jerome T. Foerster, Harrisburg, PA, David W. Addy, Jim Thorpe, Lehighton, PA, for respondents.

## MEMORANDUM

NEALON, District Judge.

Petitioner, Gerald J. Smith, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on August 21, 1997, in which he contended that the state courts erroneously denied his motion to suppress evidence gathered during the execution of an allegedly invalid search warrant in violation of his Fourth Amendment right against unreasonable searches and seizures. (Doc. 1). Petitioner filed a counseled amended petition on December 15, 1997. (Doc. 19). United States Magistrate Judge J. Andrew Smyser issued a Report and Recommendation on November 10, 1998, recommending that Smith's petition be granted, and that he be released from incarceration. (Doc. 54). Respondent submitted objections to the Magistrate Judge's Report on November 24, 1998. (Docs. 55 & 56). Petitioner filed a response to the objections on January 15, 1999. (Doc. 59). Thus, the matter is ripe for consideration by this Court. Although the Magistrate Judge thoroughly analyzed the facts and applicable law, the Court disagrees with his conclusions and, for the following reasons, the Report and Recommendation will not be adopted, and Smith's petition for a writ of habeas corpus will be denied.

## BACKGROUND

Smith was convicted by a jury in Carbon County, Pennsylvania, for conspiracy to possess with intent to deliver cocaine, possession with intent to deliver cocaine, conspiracy to possess cocaine and possession of cocaine. He was sentenced to five to ten years of incarceration. On appeal, the Superior Court of Pennsylvania affirmed his conviction, and the Supreme Court of Pennsylvania denied the petition for allowance of appeal.

### 1. Factual Background

In connection with an undercover reverse sting operation, Agent Jeffrey P. Aster of the Pennsylvania Office of Attorney General, Bureau of Narcotics Investigation and Drug Control, and Officer Joseph Solarcyzk of the Carbon County Drug Task Force (Drug Task Force), submitted an affidavit in support of a search warrant application to District Justice Bruce Appleton. The affidavit revealed that both Officer Solarcyzk and Agent Aster made a controlled purchase of cocaine from Smith in August of 1994, and that the Drug Task Force had maintained an on-

going investigation of Smith from that time. In addition, a confidential informant, who had proven reliable in the past (whose information has led to the arrest and conviction of multiple individuals) contacted a member of the Drug Task Force with information that Smith would be transporting a large quantity of cocaine during the evening hours of December 3, 1994 in the Carbon County area. District Justice Appleton issued the warrant.

To effectuate the reverse sting, Agent Aster supplied a tortilla chip cannister containing four ounces of cocaine in a secret compartment to Frank Passalaqua, the confidential informant referred to in the warrant application. Passalaqua then telephoned Smith and asked Smith to come to his house, allegedly indicating that he now had the cocaine Smith wanted to purchase. Agent Aster and Officer Solarcyzk secreted themselves in a bedroom in Passalaqua's home, waiting for Smith to arrive. Both officers observed Smith drive up to Passalaqua's home in his Camaro. While Aster and Solarcyzk could not actually see the drug transaction, they could hear the conversation between Smith and Passalaqua. According to Aster's testimony, he heard Passalaqua open the tortilla chip cannister and tell Smith how the secret compartment worked. In addition, Smith allegedly stated something to the effect that he would return the following day after the Eagles' game with the money. Smith then left Passalaqua's house with the chip cannister.

Tabatha Mertz, Smith's girlfriend at the time, testified that on the evening of December 3, 1994, she and Smith were together at Tammy Williams' house when Smith received a telephone call. According to Mertz's testimony, Smith told her that he was going to Passalaqua's house to pick up cocaine from him. She accompanied Smith to Passalaqa's residence, and waited for him in the car while he went inside. Mertz testified that Smith emerged with the chip cannister, and told her before they were arrested that there

were four ounces of cocaine in the bottom of the can.

After Smith left Passalaqua's residence with the chip cannister, Aster called the other undercover officers and instructed them that Smith was en route with the cocaine, and directed them to stop him at the pre-determined location. At the stop, Officers John Rupell and Anthony Valusek, both of the Drug Task Force, removed Smith and the chip cannister from the vehicle. Valusek unscrewed the bottom of the cannister, revealing the cocaine. Smith was then arrested and the cocaine seized.

### 2. Procedural Background

Smith originally filed his petition in the Eastern District of Pennsylvania, which petition was subsequently transferred to this Court. Counsel was appointed to represent petitioner, and an amended petition was submitted on December 15, 1997, alleging that the trial court (the Court of Common Pleas of Carbon County) improperly denied Smith's motion to suppress all evidence collected during the execution of an invalid search warrant in violation of his Fourth Amendment rights. (Doc. 19). Petitioner claims that the supporting affidavit and warrant contained misleading statements and material omissions, the cumulative effect of which prevented the issuing magistrate, District Justice Bruce Appleton, from making a neutral and detached determination of probable cause. In addition, Smith argues that the trial court erroneously denied his motion to compel disclosure of the identity of the confidential informant cited in the search warrant and supporting affidavit as the source of the information leading to the drug transaction and Smith's subsequent arrest, which prevented him from mounting the defense that the confidential informant was a private law client of Assistant District Attorney David W. Addy, and that the confidential informant may have "set up" Smith in return for Addy's free legal services. Smith contends that this private

relationship constituted a corrupting influence which colored the facts represented in the warrant application and should have been presented to the issuing magistrate in order to facilitate a neutral and detached determination of probable cause.

Respondent McCollough submitted a response to the petition on January 26, 1998 (Doc. 26), to which Smith filed a traverse on February 17, 1998. (Doc. 29). Upon motion, (Doc. 24), this Court dismissed the District Attorney of Carbon County and the Attorney General of Pennsylvania, Michael Fisher, as respondents by Order dated June 5, 1998. (Doc. 35). On July 24, 1998, Magistrate Judge Smyser ordered a hearing on the petition. (Doc. 39). Smith appeared pursuant to a writ of habeas corpus ad testificandum at the hearing, which was held on October 26, 1998, in Harrisburg, Pennsylvania.[1] Thereafter, Magistrate Judge Smyser issued a Report and Recommendation on November 10, 1998, agreeing with petitioner and recommending that this Court issue the writ and release Smith from prison. (Doc. 54).

Respondent filed objections to the Report and Recommendation on November 24, 1998. (Doc. 55). The first of McCollough's six main arguments raised the objection that even if the writ were to issue, Smith should not be released from prison, as Magistrate Judge Smyser's Report recommended, but should remain incarcerated pending retrial by the Commonwealth. Second, even if the search warrant were invalid, the automobile exception to the warrant requirement applied, negating any deficiencies in the warrant and rendering the evidence gathered during Smith's arrest properly admissible at trial. Third, respondent disagreed with Magistrate Judge Smyser's conclusion that no probable cause existed to issue the search warrant, arguing that the purported misstatements and omissions from the affidavit regarding the "reverse sting" operation

did not vitiate the finding of probable cause. Fourth, respondent challenged the importance that Magistrate Judge Smyser placed upon the trial court's denial of Smith's motion to release the identity of the confidential informant, noting that the transcript of the suppression hearing revealed that narcotics Agent Aster admitted during testimony that the confidential informant was the individual who handed the tortilla chip cannister to Smith. Fifth, respondent opposed the Magistrate's determination that Smith was not afforded a full and fair opportunity to litigate his Fourth Amendment claims in state court proceedings as required by *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). Finally, McCollough objected to the conclusion that all of the requirements under 28 U.S.C. § 2254(d) and (e) were met, arguing that they were not met and therefore, this Court was barred from entertaining Smith's petition.

Smith filed a response to respondent's objections to the Report and Recommendation on January 15, 1999. (Doc. 59). In the response, Smith claims that the automobile exception is inapplicable for two reasons: (1) the government waived the argument because it did not raise it in a timely manner; and (2) because the government planned to arrest Smith while he was in his car, the exigent circumstance requirement was not present for the exception to apply. (Doc. 59). The remainder of the response reiterates arguments raised in other documents filed previously.

## ANALYSIS

### I.

When objections to a report and recommendation have been filed, under 28 U.S.C. § 636(b)(1)(C), the Court must make a *de novo* consideration of those portions of the report addressed by the objections. *See Sample v. Diecks*, 885

---

1. Magistrate Judge Smyser noted in the Report and Recommendation that "the facts developed during the federal *habeas corpus* hearing [were] of little or no materiality to the correct disposition of this *habeas corpus* petition." (Doc. 54, p. 3).

F.2d 1099, 1106 n. 3 (3d Cir.1989). In so doing, the Court may accept, reject, or modify, in whole or in part, the findings and recommendations contained in the report. 28 U.S.C. § 636(b)(1); Local Rule 72.31. Further, the Court may, in the exercise of sound judicial discretion, rely on the Magistrate Judge's proposed findings and recommendations. *See United States v. Raddatz*, 447 U.S. 667, 676, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980); *Goney v. Clark*, 749 F.2d 5, 7 (3d Cir.1984). This Court has conducted a careful *de novo* review of this case, including respondent's objections to the Magistrate Judge's Report (Docs. 55 & 56) and petitioner's response to respondent's objections. (Doc. 59).

## II.

The finding that Smith was not afforded a full and fair hearing on his Fourth Amendment claim will be addressed at the outset. It is axiomatic that the right to be free from "arbitrary intrusion" by the police which is "protected by the Fourth Amendment is 'implicit in the concept of ordered liberty,'" and as such is enforceable against the States through the due process clause of the Fourteenth Amendment. *Stone v. Powell*, 428 U.S. 465, 483, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) (quoting *Wolf v. People of State of Colorado*, 338 U.S. 25, 27–28, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949)). *See also Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). The primary justification for the exclusionary rule is to deter police conduct that violates Fourth Amendment rights. *Stone*, 428 U.S. at 486, 96 S.Ct. 3037. *See United States v. Calandra*, 414 U.S. 338, 348, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). "But, despite the broad deterrent purpose of the exclusionary rule, it has never been interpreted to proscribe the introduction of illegally seized evidence in all proceedings or against all persons." *Stone*, 428 U.S. at 486, 96 S.Ct. 3037. Specifically, "where the state has provided an opportunity for full and fair litigation of a Fourth Amend-

ment claim, the Constitution does *not* require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.* at 482, 96 S.Ct. 3037 (emphasis added). Therefore, before this Court addresses the specific allegations of Smith's petition, petitioner must demonstrate that he was denied a "full and fair opportunity" to litigate his Fourth Amendment claim during the state court proceedings.

Magistrate Judge Smyser concluded in the Report and Recommendation that petitioner was denied a full and fair opportunity to litigate his claim in state court for two reasons: [1] "the trial court's ruling against the disclosure of the identity of the confidential informant, and [2] the trial court's failure to directly analyze the lack of material information given to the issuing authority who reviewed the application, rendered the prospect for a full and fair hearing unfulfilled." (Doc. 54, p. 26). With regard to the trial court's ruling on Smith's motion to disclose the identity of the confidential informant, Magistrate Judge Smyser opined that since the trial court prohibited the petitioner from discovering that the confidential informant was also an actor in the reverse sting operation, Smith was denied the opportunity to challenge the existence of probable cause and satisfaction of the warrant requirement. (Doc. 54, p. 27). The Report further states that, as a result of this ruling, petitioner had no opportunity to show the suppression court the actual nature of the events giving rise to the search warrant application. *Id.* However, the record shows that Smith did in fact have knowledge of the confidential informant's identity inasmuch as the transcript of the hearing on the motion to suppress reveals that Smith's attorney asked Agent Aster two pointed questions regarding the confidential informant's identity, *viz.*, "Q. Agent Aster, am I correct that the person who gave Mr. Smith the cannister, which con-

tained the alleged drugs, was the confidential informant? A. Yes. Q. It was the confidential informant? A. Yes." (Doc. 5, Suppression Hearing transcript, p. 40–41). Since Smith knew at the suppression hearing that the individual who handed him the chip cannister was the confidential informant and also knew where he resided since the drug transaction occurred at the informant's house, the trial court's ruling against disclosure of his identity cannot be viewed as a contributory factor in denying Smith a full and fair opportunity to litigate his claim. As the Pennsylvania Superior Court noted in its Memorandum affirming the trial court's ruling, after the suppression hearing, Smith was free to subpoena the confidential informant to testify at trial if he so chose, giving him occasion to inquire further into all relevant events leading up to his arrest. *See* Attachment 9 to Doc. 4 (Memorandum of Law by Superior Court of Pennsylvania *aff'g* the trial court's denial of petitioner's motion to suppress evidence). As such, petitioner's claim that formal disclosure of the confidential informant's identity would have aided in establishing his defense lacks merit.

■ As to the trial court's failure to directly analyze the lack of material information contained in the warrant and supporting affidavit, as respondent correctly notes, if the state proceedings afforded petitioner a full and fair opportunity to litigate his claims. "[t]heir decision, even if erroneous, is ... beyond Article III review." *United States ex rel. Hickey v. Jeffes*, 571 F.2d 762, 766 (3d Cir.1978). *See* Respondent's Brief in support of Objections to the Report and Recommendation (Doc. 56, p. 29). The "material information" omitted from the warrant and affidavit referred to in the Report included the following facts: that the confidential informant not only provided

information, but actively participated in the "reverse sting" operation[2]; that the confidential informant had a private law relationship with the Assistant District Attorney on other matters; and that the confidential informant actually provided the drugs to Smith, as supplied to him by the government. (Doc. 54, p. 28). The Magistrate Judge determined that "if the issuing authority had known of this [the above enumerated facts], he might have wanted to know more about the 'confidential informant'—his motives, his relationship to the police and the prosecution and his relationship to the target—and might have wanted to know more about the tactics, logistics, setting, participants and controls to be used in the sting operation...." *Id.*

Importantly, this Court's initial task is not to re-evaluate whether there was probable cause to issue the search warrant, but to determine whether petitioner had a full and fair opportunity to litigate his Fourth Amendment claims in state court. *Stone*, 428 U.S. 465, 96 S.Ct. 3037. As respondent correctly notes, "*Stone v. Powell* is an unsurmountable obstacle to habeas corpus relief...." *United States ex rel. Hickey v. Jeffes*, 571 F.2d 762, 766 (3d Cir.1978). *See* Doc. 56, p. 30. Only after a showing that Smith was denied such an opportunity will the merits of the claims be addressed. As to the purported omissions and misrepresentations listed above, Smith fully presented his arguments to the state courts: in the suppression hearing before the trial court; on appeal to the Pennsylvania Superior Court; and, finally, in the application to the Pennsylvania Supreme Court for allocatur, which was denied.

The specifics of the warrant and supporting affidavit were addressed by both prosecution and defense counsel during the suppression hearing. After the pros-

---

**2.** "A reverse sting is an undercover operation in which the government agents pretend to be selling (rather than as is the more usual case, buying) illicit drugs from the soon-to-be de-

fendants." *Commonwealth of Pennsylvania v. Mance,* 422 Pa.Super. 584, 619 A.2d 1378, 1379 (1993).

ecution presented evidence of the confidential informant's reliability, which was contained in the affidavit, defense counsel directed questions to Agent Aster regarding the "reverse sting" operation. "Q. [E]xplain to ... the Court, Agent Aster, how this whole involvement with the confidential informant and Gerald Smith came about. A. Your client Mr. Smith had contacted someone in the community who was able to get this information to Mr. Addy; that Mr. Smith was looking for cocaine for redistribution." (Doc. 5, Suppression Hearing transcript, p. 39, 11. 1–7). "Q. [D]id you inform the District Magistrate that this was going to be a reverse sting? A. No, I did not. Q. Why didn't you inform the District Magistrate that this was going to be a reverse sting? A. -because the facts as they are related in the affidavit are complete and accurate... [e]very fact contained therein is accurate and truthful. Q. Your testimony is that it was not relevant for the District Magistrate to know that this was a reverse sting? A. That's correct. Q. Have you ever, on a search warrant in the past—or on an affidavit for a search warrant in the past—indicated that there was going to be a reverse sting? A. No." (Doc. 5, Suppression Hearing transcript, p. 40, 11. 4–24). In ruling on Smith's motion to suppress, the trial court considered the argument that omitting the "reverse sting" operation plan from the warrant and affidavit rendered the probable cause finding flawed, and rejected such argument[3]:

> "Defendant's argument is without merit for two (2) reasons. First, a 'reverse sting' operation is a constitutionally valid method for law enforcement agents to apprehend and to obtain incriminating evidence against the 'unwary criminal.' *Commonwealth of Pennsylvania v. Mance,* 422 Pa.Super. 584, 619 A.2d 1378

(1993). Secondly, Defendant's argument fails because the law only requires the Search Warrant Affidavit set forth probable cause that drugs would be found in Defendant's Camaro. There is no requirement, by case law or by statute, that the Search Warrant Affidavit set forth how the Commonwealth intends to effectuate the search."

(Attachment 9 to Document 4, Trial Court Memorandum denying Smith's motion to suppress). Further, the Pennsylvania Superior Court, on appeal, stated in its Memorandum that "[t]he suppression court adequately addressed appellant's claims regarding the issuance of the warrant ... that the Commonwealth failed to inform the District Justice that this was a 'reverse sting' operation.... Accordingly, we adopt the trial court's reasoning as it relates to these issues." (Attachment 9 to Doc. 4, Superior Court memorandum *aff'g* trial court's denial of Smith's motion to suppress). Clearly, the alleged "material omission" from the warrant application that this was a reverse sting operation in which the government supplied the drugs to petitioner has been fully and fairly litigated in the state court proceedings.

The only remaining issue is the argument that Assistant District Attorney Addy had a private law representation relationship with the confidential informant which was not disclosed in the affidavit, resulting in a "corrupting influence" upon the warrant which interfered with the magistrate's neutral and detached determination of probable cause. This issue was also considered by both the trial and appellate state courts. During the suppression hearing, defense counsel asked Agent Aster several questions regarding his knowledge of whether Addy represented, in a private capacity, the confidential informant. *See* Doc. 5, Suppression Hearing

---

**3.** It is well recognized that "reverse stings" are commonly employed by law enforcement in its efforts to combat drug trafficking: "[w]e can easily recognize that a reverse sting ... may be a very effective weapon in society's

war against drug crimes." *State v. Florez,* 134 N.J. 570, 636 A.2d 1040 (1994). *See Commonwealth of Pennsylvania v. Mance,* 422 Pa.Super. 584, 619 A.2d 1378 (1993).

transcript, p. 42, 11. 15–18. Aster answered the question in the affirmative. *Id.* at 1.19. Further, Addy himself stipulated that he represented "a particular individual who they [defendant and his counsel] may believe is the confidential informant." *Id.* at p. 41, 11. 12–15. In response to further questioning on this topic, the prosecutor [Addy] objected on relevancy grounds. At that point in the proceeding, the trial court permitted defense counsel to make an offer of proof: "we contend that the Assistant District Attorney represented the confidential informant and this representation, at the time of the search warrant, should have been given ... to the issuing authority so that the issuing authority would have evidence of possibly a corrupting influence on the informant's identity—or who the informant was; the reasons why he would give this information—to establish that the District Justice or the issuing authority did not make a neutral and detached determination when he was issuing this—THE COURT: ... I cannot fathom any remote connection between the reliability of the confidential informant and the corrupting influence that you're talking about because he was represented on some matter by District Attorney Addy." (Doc. 5, pp. 44–45, 11.12–25, 1–12). Defense counsel continued: "we allege that the information that Jerry Smith was looking to buy drugs never happened. THE COURT: Well, that's your defense. DEFENSE COUNSEL:— and that's something that should have been brought up to the District Magistrate." *Id.* at p. 46, 11. 9–18. Thereafter, the defense issued a subpoena, not to Passalaqua (the confidential informant), but to Assistant District Attorney Addy. (Doc. 54, p. 17). During a hearing on a motion to quash the subpoena, the court granted the motion to quash, instead "suggest[ing] that the defense ... subpoena Passalaqua as a trial witness to determine, without the jury present, whether Passalaqua had any information helpful to the defense." (Doc. 54, p. 17).[4] Presumably the defense chose not to follow the Court's suggestion, as the record is devoid of any testimony by Passalaqua.

The trial court stated in its memorandum denying the motion to suppress that "[t]here is no evidence in the record before this Court to support Defendant's argument. There is no evidence regarding either the identity of the Confidential Informant or that David Addy is or was privately representing the Confidential Informant in any capacity. This contention, supported only by an allegation, is meritless." (Attachment 9 to Doc. 4, Trial Court Memorandum Opinion, p. 8). Even though Addy himself stipulated to representing an individual whom the defense believed to be the confidential informant, and Aster confirmed that the individual involved in the reverse sting who handed Smith the drug cannister was the confidential informant. there is no formal identification of the confidential informant's name in the record.[5] Moreover, the rec-

---

4. The Report and Recommendation continues, stating that "[t]he Court would not permit the defense to discover whether Passalaqua had any relationship to Addy." (Doc. 54. p. 17). This statement seems directly opposed to the preceding statement that, in fact, the Court "suggested" that the defense subpoena Passalaqua himself to discover any helpful information. *Id.*

5. Petitioner argues that the trial court failed to understand the evidence presented to it, and Assistant District Attorney Addy did not correct what he knew to be a blatant mistake when the court stated that there was no evidence in the record regarding the identity of the confidential informant or that he was privately represented by Assistant District Attorney Addy. *See* (Attachment 9 to Doc. 4, Trial Court memorandum and Opinion, p. 8); Doc. 59, pp. 18–19. Magistrate Judge Smyser correctly notes that the prosecution misrepresented to the trial court the fact that the confidential informant was not an eyewitness to the drug transaction, the informant was, in fact, the eyewitness to the transaction. (Doc. 54, p. 29). However, in light of the determination that the identity of the informant, and the fact that he provided the drugs to Smith, was later revealed to the defense during the suppression hearing, this misrepresentation was remedied. Thus, the Court rejects de-

ord does not reveal any attempt by the defense to get possibly "helpful" information from the confidential informant himself. Therefore, while being barred from extracting confidential information from Assistant District Attorney Addy regarding his private law client, the defense was clearly permitted to pursue and obtain any relevant information via an alternative method: calling Passalaqua himself. As noted, the record reveals no such attempt. The trial court was unwilling to conclude that statements made during the suppression hearing, without more, amounted to a "corrupting influence." The Superior Court of Pennsylvania adopted the trial court's ruling on this issue as well. (Attachment 9 to Doc. 4, Superior Court of Pennsylvania Memorandum *aff'g* the trial Court's ruling, p. 4.). Again, the task before this Court is not to agree or disagree with the state court rulings on the Fourth Amendment issues themselves, but to determine whether there was sufficient opportunity to litigate petitioner's claims. The record satisfactorily demonstrates that Smith had a full and fair opportunity to argue these issues in the state court proceedings. As such, *Stone v. Powell* bars this Court from entertaining petitioner's Fourth Amendment claims.

### III.

■ Even if this Court were to agree with the finding that petitioner was not afforded a full and fair hearing on his Fourth Amendment claims in state court, the automobile exception to the warrant requirement applies in this situation, negating the need for a valid search warrant and rendering petitioner's claims moot. Although it appears that respondent first raised this argument in his objections to the Report and Recommendation and, consequently, Magistrate Judge Smyser had no opportunity to specifically address this argument, the automobile exception remains a viable counter-argument to Smith's claims.

■ "If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more." *Pennsylvania v. Labron*, 518 U.S. 938, 940, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996) (citing *California v. Carney*, 471 U.S. 386, 393, 105 S.Ct. 2066, 85 L.Ed.2d 406) (1985)). The United States Supreme Court clarified in *Labron* that if a vehicle is readily mobile, that fact alone constitutes a sufficient exigent circumstance to justify a warrantless search of that vehicle if probable cause otherwise exists. *See id.* Further, a search which meets the elements of a valid search under the automobile exception to the warrant requirement does not become illegal even though the search warrant was invalid. *United States v. Martinez*, 78 F.3d 399 (8th Cir.1996). In the instant case, it is undisputed that Smith was driving his Camaro when he was pulled over by the undercover narcotics agents and police officers and subsequently arrested after discovery of the cocaine in the chip cannister. Therefore, the "readily mobile vehicle" requirement is clearly met, and the only remaining issue for review is whether probable cause existed for the search.

■ Law enforcement may conduct a warrantless search of a vehicle and any container found therein if a reasonable police officer has probable cause to believe there is contraband inside the vehicle. *See United States v. Ruiz*, 1998 WL 622405, *2 (E.D.Pa.1998) (citing *United States v. Ross*, 456 U.S. 798, 823, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982)). "The test for probable cause in this context is simply whether 'there is a fair probability that contraband or evidence of a crime will be found in a particular place'" under the totality of the circumstances. *Ruiz*, 1998 WL 622405, *2 (quoting *Illinois v. Gates*, 462 U.S. 213,

---

fense counsel's argument that the trial court's alleged misunderstanding of the evidence and refusal to order formal disclosure of the confidential informant's name denied Smith a full and fair opportunity to litigate his Fourth Amendment claim.

238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). The probable cause test is an objective one, based on "the facts available to the officers at the moment of arrest." *See Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir.1994) (quoting *Beck v. Ohio*, 379 U.S. 89, 96, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)). The facts in the present case demonstrate that probable cause did exist, negating the need for a valid search warrant. A confidential informant, proven reliable in the past, contacted authorities regarding Smith's intent to purchase cocaine for redistribution. Agents and officers maintained an on-going investigation of Smith, and made a controlled purchase of cocaine from him in August of 1994. Agent Aster provided the informant with a chip cannister containing a secret compartment with four ounces of cocaine. Aster and Solarcyzk overheard the drug transaction between Smith and the informant, specifically listening to the informant describe how the secret compartment worked, and heard Smith say that he would come back the next day after the Eagles' game with some money. Agents confirmed that Smith left the informant's residence with the chip cannister. Aster called other undercover officers, indicating that Smith had the drug cannister, and instructed them to pull his vehicle over at the pre-determined location. Officers Rupell and Valusek did so, and removed Smith from the vehicle, finding the chip cannister in the center console of the vehicle. Under the totality of the facts available to officers at the time of the stop, there was probable cause to believe that contraband would be found in Smith's car. Because the automobile exception to the warrant requirement removes any illegality stemming from an allegedly insufficient warrant, the evidence gathered and introduced at trial was properly admitted.

## IV.

Lastly, the Court does not believe that "[t]his case involves an unreasonable application of federal law, most centrally *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct.

2317, 76 L.Ed.2d 527 (1983)." (Doc. 54, p. 30). The totality of the circumstances standard for probable cause as set forth in *Gates* requires that the "issuing magistrate ... make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." 462 U.S. at 238, 103 S.Ct. 2317. The Court further explained, "it is clear that 'only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause, ... [and that] [f]inely-tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence ... have no place in the magistrate's decision.'" *Id.* at 235, 103 S.Ct. 2317. Further, the Court specifically described the duty of reviewing courts as "simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing] that probable cause existed.'" *Id.* at 238–239, 103 S.Ct. 2317. Therefore, the task before this Court is not to conduct a review of the record for the purpose of making an independent decision as to whether probable cause existed for the issuance of the search warrant, but to determine whether the issuing magistrate had a substantial basis for concluding that probable cause existed at the time the warrant was issued. *Id.*

The Magistrate Judge held that the search warrant in the present case was anticipatory in nature, and should have described with particularity the expected events of the "reverse sting" operation, especially that the drugs were being provided by the government. When a search warrant and supporting affidavit contain purported omissions, "a court should ask whether the affidavit would have provided probable cause if it had contained a disclosure of the omitted information." *United States v. Frost*, 999 F.2d

737, 743 (3d Cir.1993). *See also United States v. Conley*, 856 F.Supp. 1010, 1027 (W.D.Pa.1994) (citing *Franks v. Delaware*, 438 U.S. 154, 171–72, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978)). Even if the "hypothetical affidavit" contained the omitted information regarding the reverse sting operation, the issuing magistrate would still have had a substantial basis for finding probable cause to issue the warrant. The affidavit would reveal that a confidential informant, proven reliable in the past with information leading to five arrests, contacted authorities regarding Smith's intent to purchase cocaine for redistribution. The confidential informant related that Smith himself was the source of his information. If the warrant affidavit had disclosed further that the evening events of December 3, 1994, would be a "reverse sting" operation, and that government agents had arranged to supply the informant with drugs to be sold to Smith, probable cause would still exist for the issuance of the warrant. As *Mance* indicates, reverse stings are "recognized investigative tool[s] used in law enforcement against middle-level illicit drug dealers," and further, does not violate any constitutional rights of potential defendants.[6] *Commonwealth of Pennsylvania v. Mance*, 422 Pa.Super. 584, 619 A.2d 1378, 1379 (1993). Had the affidavit revealed the reverse sting plan, that information, combined with the confidential informant's proven reliability and the source of his information, would have created a substantial basis for the issuing magistrate to conclude that there existed a fair probability that cocaine would be found in Smith's car.

## V.

Petitioner's arguments have been carefully considered and, for the reasons set forth in this Memorandum, the petition for a writ of habeas corpus will be denied.

**6.** "The government does not violate [constitutional rights] ... simply by employing an undercover or reverse sting operation, or be-

## ORDER

ACCORDINGLY, this *26th* day of January, 1999, IT IS HEREBY ORDERED THAT:

1). The Report and Recommendation issued by United States Magistrate Judge J. Andrew Smyser is not adopted (Doc. 54);

2). Smith's amended petition for a writ of habeas corpus is denied (Doc. 19);

3). The Clerk of Court is directed to close the case; and

4). The Court concludes that there is no basis for the issuance of a Certificate of Appealability.

cause its agents supply ingredients for a commission of a crime or contraband to a defendant." *Mance,* 619 A.2d at 1381.